**Robert L. TRACY, Appellant,**

v.

**ANNIE'S ATTIC, INC., and Anita Gentry, Appellees.**

No. 12-90-00313-CV.

Court of Appeals of Texas, Tyler.

July 27, 1992.

Rehearing Denied Oct. 8, 1992.

John H. Tull, Dallas, for appellant.

Michael G. Carroll, Tyler, for appellees.

SMITH, Justice.*

This is a suit based on allegations of breach of fiduciary relations, conversion, false representations, and fraud brought by Appellees, Annie's Attic, Inc., and Anita Gentry Potter,[1] against Appellant, Robert L. Tracy, and others not involved in this appeal. Tracy cross-acted and sought damages against the two Appellees for breach of contract, conversion, and wrongful injunction.

Based on jury findings, the trial court entered judgment for Appellees against Tracy for $2,678,781.76 and granted injunctive relief. Tracy received no recovery on his cross-action. The court also severed that part of the Appellees' cause of action seeking imposition of a constructive trust on Tracy's property and the appointment of a receiver.

Because Anita Gentry Potter was referred to as Annie in the trial court, the record, and in the parties' briefs, we will do the same. Annie liked to draw designs and in about 1974–1975, she decided to go into the designing business. She drew designs of dolls, quilts, and many other items. These designs were made into printed patterns and marketed through her business name of Annie's Attic. She later incorporated the business as Annie's Attic, Inc. (AAI).

The business was almost an immediate success. Because Annie disliked the financial and marketing part of the business, her husband handled this function. As AAI prospered, it bought several houses in which a tea room, bed and breakfast quarters, and a gift shop were opened for business. In 1985, Annie and her husband obtained a divorce and she bought her husband's interest in AAI. When the handling of the business affairs of AAI became too onerous for Annie to handle, she hired Tracy as a consultant to the restaurant. She later hired Tracy as a consultant to help with the retail business of AAI.

As AAI continued to prosper, it grew into a multimillion dollar operation. Annie's trust and confidence in Tracy grew and she gave him a power of attorney to make decisions for AAI in her absence. She relied more and more upon his representations concerning investments, loans, etc., until her accountant brought certain matters, which he thought to be irregular, to her attention. At that time, AAI dismissed Tracy and this suit was filed by AAI and Annie individually. The details leading to Tracy's dismissal will be discussed under the various points of error.

The first four of Tracy's 36 points of error all complain of exclusion of evidence.

■ The admission or exclusion of evidence is a matter within the discretion of the trial court. The standard of review in determining whether a trial court erred in an evidentiary ruling is abuse of discretion. *Jackson v. Van Winkle,* 660 S.W.2d 807, 810 (Tex.1983). The test in determining whether an abuse of discretion has been

* The panel before whom this cause was submitted consisted of T.C. Chadick, Associate Justice (Retired) the Supreme Court of Texas. Honorable Gerald T. Bissett, retired justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi. Honorable Jackson B. Smith, Jr., retired justice, Court of Appeals, First District of Texas at Houston, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

1. After this suit was filed in the trial court, Anita Gentry changed her last name to Potter.

committed is, did the court act without reference to any guiding rules or principles. Stated another way, the test is whether the court's action was arbitrary or unreasonable. *Downer v. Aqua Marine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The determination of whether a court abused its discretion is a matter of law. *Jackson,* 660 S.W.2d at 810.

■ One of Tracy's theories of the case was to compare the value of the work he had done at AAI, to that of his successor, John Sauer, and to show Sauer's relationship with Annie. Appellee's objection to each of Tracy's efforts to get this evidence to the jury was that it was irrelevant to any issue in this case. The court sustained the objections.

The record shows that the Appellee's alleged that Tracy committed specific acts while with AAI that resulted in a breach of a fiduciary relationship, conversion of assets, false representations, and fraud. Sauer succeeded Tracy at AAI and his work record at AAI had nothing to do with the alleged wrongful acts of Tracy. AAI terminated Tracy and sought the injunction, not Sauer. As to Tracy's allegation that the issuance of the temporary injunction was wrongful, the record reflects that this was an agreed order. Therefore, the agreed injunction had no bearing on the exclusion or admission of the evidence by the trial court.

We are of the opinion that the excluded evidence was not relevant to any material issue in the case and was properly excluded by the trial court.

Appellant's first four points of error are overruled.

Tracy's fifth point of error contends that the trial court erred in admitting Annie's testimony that would vary the terms of the written house loan promissory note (the Tracy house transaction). Over Tracy's objection, the trial court permitted Annie to testify concerning her allegations of fraud in the inducement of the note.

Annie testified that Tracy told her that he had read a new thing about how a corporation could now lend an officer of the corporation money without charging interest, and he asked her for a house loan of $300,000.00. She said he told her it would be an interest free loan for three years, payable $100,000.00 each year. She recalled that he later brought a loan agreement for her to sign and told her "the agreement was strictly for the purpose of keeping the bank out of sight," and "these papers were just a formality; they were just for the bank's comfort." Annie stated that after he had told her these things, "I just signed the things, you know, he said to sign them, and I assumed they were okay—I trusted him."

The record shows that the promissory note that Annie signed was for $315,000.00, non-interest bearing, and payable over 30 years at $10,500.00 annually. It also shows that at a later date Jim Heffel, a CPA who was comptroller for AAI, spoke to Annie about the note. She then read the note for the first time. She stated that she was surprised. She was of the opinion that Tracy had not been loyal or showed good faith to her, and that he had concealed matters which influenced her to sign the loan papers. She explained that she had acted as a representative of AAI in the entire transaction.

■ It is well established that the extrinsic evidence rule ordinarily requires the exclusion of parole evidence that would add to, vary, or contradict the unambiguous terms of a written contract. *Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948, 952 (1960). However, it is equally well established that extrinsic evidence is admissible to show fraud inducement to enter into a written contract. *Paxton v. Spencer,* 503 S.W.2d 637, 643 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Roy Klossner Co. v. McIntire,* 301 S.W.2d 197 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.).

■ We hold that the trial court did not err in admitting extrinsic evidence to show misrepresentations and concealment of material facts that induced the signing of the loan agreement.

Tracy's fifth point of error is overruled.

■ In 15 points of error, Tracy asserts that there is no evidence or insufficient evidence to support the judgment of the court or the jury findings. In four of these points of error, 10, 11, 12 and 13, Tracy alleges that there was no evidence or insufficient evidence to overrule his exceptions to question five, subdivisions one, three, and five, and to question six, subdivision one, three, and four. We have closely read the arguments set forth and can find no argument or reference whatsoever to the evidence or lack of evidence referred to in points of error 10, 11, 12 and 13. Points of error not briefed are waived. *Paramount Nat'l. Life Ins. Co. v. Williams*, 772 S.W.2d 255, 263 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 810 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

Tracy's points of error 10, 11, 12, and 13 are overruled.

■ In his point of error twenty, Tracy asserts that the trial court granted injunctive relief without supporting evidence or jury findings. He contends that no issue of fact was requested or submitted to the jury and therefore, it was error for the court to grant such relief. We agree that this is the general rule. *State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex.1979).

However, the record shows that when AAI first proffered the testimony of Annie to prove the necessity for injunctive relief, Tracy objected that such evidence was outside the pleadings and irrelevant to any issue in the case. This objection was sustained. If that ruling was error, then Tracy, having led the trial court into error, may not complain of it here. *See Missouri K. & T. Ry. Co. of Texas v. Eyer*, 96 Tex. 72, 70 S.W. 529, 530 (1902); *See also Weaver v. Jock*, 717 S.W.2d 654, 658 (Tex.App.—Waco 1986, writ ref'd n.r.e.).

Later, out of the presence of the jury, Annie testified that Tracy had a "violent" and "governmental" (sic) temper and that she was afraid of him. She stated she was afraid that he would harm or harass her or her employees. She stated that he had made calls to third parties which might interfere with her business but had not interfered with the business at the time of the trial.

■ The standard of review in injunction cases is whether the trial court's action constituted a clear abuse of discretion. *Janus Films, Inc. v. City of Fort Worth*, 163 Tex. 616, 358 S.W.2d 589 (1962); *Hues v. Warren Petroleum Company*, 814 S.W.2d 526, 529 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

■ We hold that where a party objects to the admission of facts to a jury asserting that injunctive relief is not an issue to submit to a jury, and that issue is later determined by the court, based on evidence adduced without objection out of the jury's presence, the objecting party cannot complain about the court's action.

■ We further hold that Annie's testimony of her apprehension and fear of Tracy as well as her description of the various acts of Tracy while he was associated with AAI was sufficient evidence to support the trial court granting injunctive relief, and that the court did not abuse its discretion in granting AAI injunctive relief. Tracy's twentieth point of error is overruled.

In his points of error twenty-six through thirty-four, Tracy asserts that the trial court erred in rendering judgment on the findings in questions 5, 6, and 8 because there was no evidence, or insufficient evidence, or the jury's findings against "the great and overwhelming" evidence to support the jury verdict or the court's judgment.

■ The standard of review for "no evidence" points is that the appellate courts will consider only the evidence and the reasonable inferences therefrom that support the findings of the fact finder, and disregard all evidence and inferences which are contrary to the findings. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). The standard of review in "factually insufficient evidence" points and "against the overwhelming preponderance of the evi-

dence" points is that the appellate courts will consider and weigh all the evidence. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

The inquiries in questions 5, 6, and 8 pertain to 5 different contracts executed by AAI while Tracy was associated with that firm. Question 5 asked the jury if Tracy made false representations of material facts to AAI with intent to induce it to enter into the contracts. The contracts were listed separately and the jury answered "yes" as to each contract. Question 6 asked if Tracy knew each representation was false at the time it was made. The jury answered "yes" as to each contract. Question 8 was a damage issue and the jury answered as follows:

| | |
|---|---|
| International Contract transaction: | Answer $500,000.00. |
| Tracy house transaction: | Answer $315,000.00. |
| High Tea transaction: | Answer $508,000.00. |
| Dennard transaction: | Answer $192,500.00. |
| Louisiana Hayride transaction: | Answer $-0-. |

We will discuss each of these transactions.

## INTERNATIONAL CONTRACT TRANSACTIONS

The International Contract Transaction consists of a series of contracts between AAI and Tracy pertaining to AAI sales outside the United States and to commissions to be paid to Tracy.

In 1986, Annie became desirous of developing international sales for AAI and after discussions with Tracy, AAI entered into a contract with Tracy whereby he would get 90% of the net profit from all international sales excluding sales in Canada, which AAI had already developed.

The international sales did not increase appreciably and averaged about $5,000.00 to $7,000.00 annually between 1986 and 1988. Tracy's explanation to Annie of why the international sales had not increased was that he was spending so much of his time on increasing sales and promotions in the United States and Canada. He told her he didn't think the first International sale contract was fair to AAI or to himself and that he thought a "50/50 split" of international sales with Canada included would be fair. After considering Tracy's comments, Annie said she agreed to such an arrangement because she wanted to increase international sales and a "50/50 split" of profits seemed fair.

Tracy prepared the second agreement and it was signed in October, 1987 but was effective as of June 1, 1987. It provided that AAI and Tracy were each to receive 50% of the "sale gross/income." It also provided, in a later paragraph, that AAI would "bear all cost of doing business regarding these sales." Under this second agreement Tracy's commissions for 1987–89 inclusive were $654,103.00. AAI's accountant testified that during these same years AAI lost money on its international sales because the 75% cost of sales exceeded 50% of the income from the sales.

Annie testified that Tracy told her that the profits on the international sales would be split "50/50" and although Tracy had not misrepresented the 50/50 split she was of the opinion that he was unfaithful and not loyal because she was misled to believe that the contract called for a split of profits. She testified that she trusted Tracy and relied upon his representations. She stated she did not read the contract. On the other hand, Tracy stated that he explained the contract to her fully and that she read the contract and understood it.

## TRACY HOUSE TRANSACTION

The basic facts of this transaction were set out in point of error five. Annie testified that Tracy told her that the loan was for $300,000.00, non-interest bearing, pay-

able $100,000.00 annually for three years and a corporation could lend an officer money without charging interest. In fact, the executed loan agreement was for $315,000.00, non-interest bearing, payable $10,500.00 annually for 30 years. Tracy's and Annie's testimony was similar in this transaction to that of the other transactions about which AAI complains. Tracy testified that the loan agreement was made for tax advantages, his and AAI's. He stated that he fully explained the agreement to Annie and that she read the contract. Annie's testimony was that she completely relied upon Tracy's statements concerning the written agreement, that she did not read the agreement and that the first time she read the agreement was when Mr. Heffel the AAI accountant later brought the agreement to her attention. Upon reading the agreement she stated she was surprised and felt that Tracy had not been loyal or showed good faith to her, as well as the fact that he had concealed matters which influenced her to sign the loan papers.

## HIGH TEA TRANSACTION

Tracy recommended to Annie that he thought it would be a good long term investment for AAI to invest $300,000.00 into a company called High Tea. He told her that the company was formed to own liquor stores. He said that for a $300,000.00 investment AAI would own 23% of the stock of High Tea. Tracy testified that he explained this investment to Annie. Annie testified that Tracy concealed facts on the transaction, that Tracy's actions were not loyal or in good faith and that the transaction was not fair and honest. She also stated that Tracy made false representations of material facts that she relied on.

The High Tea Corporation was capitalized for $400,000.00. AAI did receive 23% of the stock for its $300,000.00 investment which meant that its stock was worth $92,000.00. Tracy invested $100,000.00 and received 77% of the stock which had a worth of $308,000.00. After High Tea commenced business, Tracy authorized loans from AAI to High Tea. Tracy was president of High Tea. AAI checks in the rec-

ords show that in excess of $350,000.00 were made to High Tea. High Tea owed AAI $208,500.00 at time of trial. Tracy stated he mentioned to Annie that loans were being between the companies but she testified that she wasn't aware of the loans. At the same time these loans were made by AAI to High Tea, personal loans guaranteed by Tracy at the bank were reduced by $188,000.00. Some of the AAI loan checks were made jointly to High Tea and the bank.

## DENNARD TRANSACTION

Tracy recommended to Annie that AAI purchase Dennard's as an investment. Dennard's was a company that sold restaurant equipment and supplies. AAI invested $157,000.00 to purchase the assets but assumed no responsibility for Dennard's liabilities. After that a series of loans were made to Dennard's totaling $292,357.76. AAI records show only one loan of $90,000.00 was authorized. There was $12,667.00 in interest due on that loan. Tracy stated he told Annie that inter-company loans were being made but could not recall conversations about specific loans. Annie testified she was unaware of any of the loans except a $90,000.00 loan. Mr. Heffel, the company accountant, testified that Tracy made $180,000.00 in unauthorized loans to Dennard's. Heffel also testified that AAI is not seeking recovery of the $157,000.00 investment money.

We discuss the Dennard transaction first because we are of the opinion that it is patently clear that Tracy's points of error concerning lack of evidence to support the jury's answers and the court's judgment as to the Dennard transaction should be sustained.

As heretofore stated, question five asked the jury if Tracy made false representations of material facts to AAI with intent to induce it into the Dennard contract, and did AAI rely on those representations.

AAI in producing its evidence did not seek to recover the initial $157,000.00 it invested in Dennard's. As Mr. Heffel stated, AAI was not seeking recovery of the

$157,000.00. In its evidence AAI sought only the recovery of unauthorized loans, and that is what the jury awarded; that is, $180,000.00 in unauthorized loans plus $12,500.00 interest, totaling $192,500.00.

The proof of unauthorized loans had no relationship whatsoever to the questions submitted to the jury concerning false representations made to induce AAI to enter into the Dennard Transaction. We find no evidence in the record that would support the jury's answers or the court's judgment in awarding damages on the Dennard's transaction.

The International Contract Transaction evidence, when reduced to the essential testimony, is a "swearing match", between Tracy and Annie as to what transpired on the date when the contract was signed. Tracy's testimony that he explained the contract to Annie, that she read the contract, and she understood the contract is in direct conflict with Annie's testimony. Tracy contends that he was only a consultant to AAI and that as such he owed no fiduciary duty to AAI or Annie. He was of the opinion that even though he had a power of attorney to act for AAI in Annie's absence, he still did not have a fiduciary relationship with AAI or Annie, the owner of AAI.

■ The record shows that Tracy's relationship with AAI was much more than a consultant with a power of attorney. Tracy's own testimony reveals that he was actively engaged in the financial, marketing, and day to day decision making process at AAI's executive headquarters. The record also shows that Tracy considered himself an officer of AAI. His approach to Annie on the Tracy House transaction was that a company could now make a non-interest bearing loan to one of its officers.

The executive offices of AAI were located in Tyler, Texas and the accounting and financial records were kept in these offices. Tracy's personal office was located within AAI's executive offices. AAI's accountant Mr. Heffel, testified that he went to Tracy for decisions on company business.

Annie's main purpose in entering into the business relationship with Tracy was to get someone to relieve her of the administrative duties in the business office. Tracy did a commendable job in this regard for AAI. However, the above facts show that Tracy was more than just a consultant to AAI.

■ We find that the above evidence was sufficient to support the jury's answer and the court's judgment that Tracy knowingly made false representations to induce AAI to rely upon and enter into the international sales agreement. We also find that the evidence supports the jury's answer that AAI suffered damages of $500,000.00 on the international sales agreement. The record shows that Tracy, after the last international sales agreement was signed, received $654,103.00 while AAI made no profit and actually suffered losses. The evidence is sufficient to support the jury finding.

■ The Tracy house transaction was fully set out in point of error five and it is not necessary to restate. The jury was entitled to believe Annie's testimony, if it so desired, that Tracy told her that the loan was for $300,000.00, non-interest bearing, and payable $100,000.00 for three years. This contrasted with the actual terms of the agreement which were $315,000.00, non-interest bearing, and payable $10,500.00 annually for 30 years. The jury was also entitled to consider the relationship between Tracy and Annie in determining whether Tracy misrepresented facts. It could further consider Tracy's response, when he was asked if this was a fair and honest deal, he announced, "a deal is a deal."

We are of the opinion that there was sufficient evidence to support the jury's verdict that Tracy knowingly made false representations of material facts to induce AAI to enter into the Tracy house transaction. We find that since Tracy had made no payment on the $315,000.00 loan, the evidence supports the jury's answer that AAI was damaged $315,000.00.

■ Tracy's actions concerning the High Tea transactions were what eventual-

ly caused AAI to sever its relationship with Tracy and to file the present lawsuit. The initial investment by AAI into the High Tea transaction was $300,000.00. It received 23% of the stock worth $92,000.00. Tracy invested $100,000.00 and received 77% of the stock worth $308,000.00. These facts were brought to Annie's attention after Mr. Heffel had been in a meeting with Tracy and several other employees of AAI. In that meeting, Tracy told those present that it was his intent to form a company called the Coffee City Partnership. It was his intent to transfer the land owned by the High Tea Company to the Coffee City Partnership and to leave $345,000.00 worth of equipment and inventory in the High Tea Company. He then was going to divest AAI of any ownership in High Tea and give it a 23% interest in the Coffee City Partnership and he would own 77% in the Coffee City Partnership. The land which the Coffee City Partnership was to obtain was mortgaged, and according to Heffel the balance owed on the mortgage was approximately the same as the value of the land. Heffel stated that during the course of the meeting he objected on several occasions to this type of transaction. He said that, in effect, if the transaction went through, High Tea would have assets of approximately $345,000.00 and be completely owned by Tracy while the Coffee City Partnership would have a net worth of zero and AAI's $300,000.00 investment in High Tea would be worth nothing.

Heffel testified that he wanted to inform Annie of Tracy's intentions but wanted to talk to Annie when Tracy was not present. He stated that he talked to Annie privately and explained to her what had happened on AAI's initial investment of $300,000.00 into High Tea and what Tracy intended to do. He said Annie began to look into the High Tea matter as well as into the other transactions involved in this suit. AAI severed its relationship with Tracy and the Coffee City partnership never came into existence.

In the High Tea transactions as in the other transactions involved in this suit, Tracy testified that he explained the transaction fully to Annie, that she understood the transaction, and she agreed to go into the transaction. Annie's testimony like her testimony in the other transactions involved in this suit was that Tracy had not fully explained the transaction to her and had misrepresented the facts to her, although at one part of her testimony she stated Tracy did not misrepresent facts to her. We are of the opinion that the facts are fairly obvious that Tracy did not reveal to Annie that an AAI investment of $300,000.00 in a company capitalized for $400,000.00 would receive in return 23% of the stock worth only $92,000.00. We find that the evidence supports the jury finding that Tracy made false representations of material facts that caused AAI to rely on his representations and induced it to enter into the High Tea transaction.

Tracy also contends that there is no evidence or insufficient evidence to support the jury's verdict in the court's judgment of $508,000.00 damages suffered by AAI in the High Tea transaction.

AAI's original investment was $300,000.00. Mr. Heffel, AAI's accountant testified that High Tea was organized about July, 1987. The evidence shows that the first loan AAI made to High Tea was on July 28, 1988 and the last loan was made on October 26, 1989. AAI asserts that $208,500.00 of these loans were unauthorized and unpaid. We can find no evidence that the loans, which were made one to two years after AAI had made its investment in High Tea, had anything to do with inducing AAI to enter into the High Tea transaction in 1987.

Because it is obvious that the jury's finding of $508,000.00 damages was reached by adding together the $300,000.00 investment and the $208,000.00 loan, we hold that the jury improperly included the $208,000.00 in loans in its computation of the damages AAI suffered as a result of Tracy's representations made to induce AAI into the High Tea transaction. The evidence supports only a $300,000.00 award in this connection.

We overrule Tracy's points of error 26 through 34 with the exception that we sustain that part of point of error 32 which

alleges there was no evidence to support the damage award to the Dennard transaction, and we sustain that part of Tracy's point of error 34, which alleges that the damage award on the High Tea transaction was against the overwhelming weight of the evidence, to the extent that the evidence shows the award of damages on the High Tea transaction should have been only $300,000.00, not $508,000.00.

In his points of error six through nine, Tracy asserts that the trial court erred in overruling his objections to the submission of question number one and the instructions contained thereon. He acknowledges that AAI received no judgment as a result of that question. However, he contends that the jury's findings in question one, that Tracy breached his fiduciary duty to AAI and its finding in question number two, that AAI suffered $47,500.00 damages as a result of that breach could not be isolated from questions five, six, and eight on which the court based its judgment.

It is true, as Tracy contends, that AAI phrased some of its questions to witnesses in terms of "fiduciary duty," but questions five, six, and eight in the court's charge do not contain the phrase "fiduciary duty." Those questions inquired of "false representations," "representation," and "misrepresentations."

We are of the opinion that since no judgment was rendered by the court based on jury findings in questions one and two that any error in those questions was harmless. We are also of the opinion that the mere asking of those questions, relating to a fiduciary relationship, did not so permeate questions five, six, and eight, pertaining to representation and misrepresentations, to the extent that it misled or caused a jury to give improper answers.

Tracy's points of error six through nine are overruled.

In his point of error 14, Tracy contends that the trial court erred in not giving his requested instructions concerning the interpretation of contracts. He correctly states that the construction of unam-

biguous contracts is a matter of law for submission to the court. Tracy complains that the court failed to inform the jury of this fact.

We agree that such an instruction as Tracy suggests is often helpful to a jury. However, we can find nothing in the statutory law or the case law that makes it mandatory for a trial court to give an instruction in its written charge to a jury that it is the duty of the court to interpret or construe all unambiguous contracts. Tracy has not cited us to any authority that requires such an instruction be placed in the court's charge. Rule 226A, Sec. II of the TEXAS RULES OF CIVIL PROCEDURE requires the trial court to orally instruct the jury that, "it is your duty to listen to and consider the evidence and to determine fact issues later submitted to you, but I, as Judge, will decide matters of law."

It appears to us that the oral instruction in Rule 226A adequately informed the jury that the court will make all decisions of law. Any further instructions concerning the court's clarification or explanation of its function in making decisions is within the discretion of the trial court.

We find no abuse of discretion by the trial court in refusing to reiterate in its charge that it will make all decisions of law. Tracy's fourteenth point of error is overruled.

In his fifteenth point of error, Tracy contends that the trial court erred in refusing to submit to the jury an issue on its cross-claim for AAI's breach of the International Sales Agreement and the damages he sustained as a result of that breach.

The trial court ruled as a matter of law that the International Sales Agreement was not enforceable because it violated the "rule against perpetuities." We believe the court's ruling to be correct, but for the wrong reason.

In the final International Sales Agreement dated October 28, 1987, Tracy included the following sentence, "this is an everlasting agreement."

We believe the proper reason for the court to refuse to submit the breach of contract issue is that such a contract contemplates continuing performance for an indefinite duration and can be terminated at the will of either party. *Clear Lake City Water Authority v. Clear Lake Utilities Co.*, 549 S.W.2d 385, 390 (Tex.1977).

It is uncontested that AAI terminated the International Sales Agreement when it dismissed Tracy.

We hold that the trial court properly refused to submit to the jury Tracy's issue seeking damages for AAI's breach of the International Sales Agreement.

Tracy's fifteenth point of error is overruled.

Tracy's points of error sixteen through nineteen pertain to alleged errors by the trial court in the entry of its judgment and to the severance by the trial court of that portion of AAI's petition seeking the appointment of a receiver and the imposition of a constructive trust on Tracy's property. He asserts that he did not get proper notice that the court was going to sign its orders, that the court and AAI's counsel had *ex parte* communications about the orders, and that the motion for severance, order of severance, final judgment, and post judgment of writs of garnishment were all served on his counsel at the same time.

We find nothing in the record to support Tracy's allegation that AAI's counsel and the trial court had *ex parte* communications. This is mere surmise on his part.

As to Tracy's allegations that the trial court did not have an open court hearing before signing the final judgment and severance order, we find no rule in the TEXAS RULES OF CIVIL PROCEDURE that makes such a hearing mandatory. Rule 305 of the TEXAS RULES OF CIVIL PROCEDURE provides that "any party may prepare and submit a proposed judgment to the court for signature." That rule also provides "each party who submits a proposed judgment shall serve the proposed judgment on all other parties—in accordance with Rule 21A." Rule 21A provides that "service may be had by delivering a copy ... to the parties

duly authorized ... attorney of record." Rule 20 requires a three day notice where a hearing is being requested for a court order. None of the above rules require a specific length of time for notice to be given except where a hearing is requested or where a party has the right or is required to do some act within the prescribed time. Former Rule 72, repealed effective September 1, 1990, required that the attorney who files a motion, certify on the filed pleading that notice requirements have been met.

Our record reflects that AAI's motion for severance was filed on May 25, 1990. The docket shows that the motion for severance was signed on May 30, 1990 and the court's final judgment was signed on May 30, 1990. Neither the motion for severance nor the submitted final judgment requested a hearing. There is no personal signature of AAI's counsel on the motion for severance stating that notice had been complied with requirements of Rule 72.

Tracy states he received copies of the motion for severance and proposed final judgment on May 30, 1990, and that he was deprived of appearing for a hearing because of the late notice.

We agree with Tracy that it is customary to give opposing counsel adequate notice to respond to a motion even though a response is not required. However, in this instance, no hearings were requested, and other than the noncompliance with the signature required by Rule 72 on the motion to sever we find no failure to give required notice.

Because Tracy's counsel did get notice of the orders submitted to the trial court and because he timely advised the trial court in his motions for new trial of what had occurred, we are of the opinion that he has not been deprived of any right afforded to him by law, and he has shown no harm.

As to Tracy's complaint that AAI's severance motion was nothing more than a motion for separate trial, we find no merit to this contention. AAI's petition sought four types of relief, damages, injunctive, receivership, and imposement of a

constructive trust. The apparent purpose in severing the questions of the appointment of a receiver and the imposition of a constructive trust on Tracy's properties was to enter a final judgment and expedite an appeal on the damage and injunctive portion of the final judgment. The two sets of issues are separate and distinct. Rule 41 of TEX.R.CIV.P. states in pertinent part: "Any claim against a party may be severed and proceeded with separately." A claim may be properly severed if it is part of a controversy which involves more than one cause of action. *McGuire v. Commercial Union Ins. Co. of N.Y.*, 431 S.W.2d 347, 351 (Tex.1968).

Trial judges have great latitude in severing causes of action. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex.1982). The standard of review in determining whether a trial court erred in ordering a severance is abuse of discretion. *Id.* The trial court in this suit had many matters to consider before making its decision to sever. When all of the facts of this case are considered, we cannot say the trial court abused its discretion.

Tracy's points of error 16 through 19 are overruled.

In Appellant's points of error 21 through 24, he alleges the trial court erred in awarding prejudgment interest on the four transactions in which the jury awarded AAI damages. Tracy asserts that "there is no way that the court may determine the elements of damage or the standard by which the jury determined the damage." We respectfully disagree. Each of the court's prejudgment interest computations were referable to a definite point in time, that is, the date of the inception of each of the four contracts on which the jury found damages. The court took these specific contract dates and its computations of interest began six months thereafter and computed the length of time involved to date of its judgment. The court then applied the proper legal rate of interest to the lapsed time. This is the proper method to compute prejudgment interest. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985).

We hold that the trial court used the proper formula to compute the prejudgment interest awarded in its final judgment. However, because we have held that there was no evidence to support the $192,500 Dennard transaction damages awarded by the court, we hold that the award of $32,187.05 interest on the Dennard damages was improper and must be set aside. Furthermore, because we have held that there was only sufficient evidence to support a damage award of $300,000 on the High Tea transaction and the trial court's prejudgment interest award was computed on the basis of $508,000 damages, we hold that the award and prejudgment interest on $508,000 was improper. Under these circumstances, we hold that prejudgment interest on the High Tea transaction should be computed on $300,000 damages.

We overrule Tracy's points of error 21 through 24 except to the extent discussed above.

Tracy's 35th point of error asserts there was no basis for the award of actual damages, therefore the court's award of punitive damages cannot stand. We have upheld the award of actual damages and find no merit to Tracy's assertion. Tracy's 35th point of error is overruled.

Tracy's point of error 36 alleges that the trial court's award of $750,000 in exemplary damages is excessive. Even though Tracy has cited no facts or case law to support this allegation, we consider his contention.

Exemplary damages must be reasonably proportioned to actual damages. *Southwestern Investment Co. v. Neeley*, 452 S.W.2d 705, 707 (Tex.1970). However, there is no set rule or ratio between the amount of actual and exemplary damages which will be considered reasonable. This determination must depend upon the facts of each particular case. *Alamo Nat. Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). Included among those factors that should be considered in determining whether an award of exemplary damages is reasonable are (1) the nature of the wrong, (2) the

character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends the public sense of justice and propriety. *Id.*

■■■ AAI's actual damages found by the jury exceeded $1,500,000. Even when we deduct the $402,000, which we have held was not supported by the evidence, AAI damages exceed $1 million.

The jury heard the evidence on each the four transactions between Tracy and AAI. It also heard Tracy's testimony that he owed no fiduciary duty to AAI and that "a deal is a deal." Tracy's lack of insensitivity to what was fair was apparent from the facts. The jury further heard the testimony of Heffel, the company accountant, who was hired by AAI upon Tracy's recommendation and who apparently considered Tracy to be over himself, Heffel, in company matters. The essence of Heffel's testimony on Tracy's proposed Coffee House transaction, was that he thought the proposal was so unfair that he could not talk to Annie in Tracy's presence. Considering Heffel's testimony, it could not have been difficult for the jury or the trial court to conclude that Heffel was so appalled and shocked by the unfairness of Tracy's coffee house proposal, that he had to bypass Tracy and report directly to Annie what Tracy was proposing to do.

In Texas, appellate courts, after considering all evidence and facets of a case, have upheld awards of exemplary damages far in excess of actual damages. *Donel v. Lara,* 703 S.W.2d 257 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.) ($2.00 compensatory damages, exemplary damages $4,500); *Tidelands Auto Club v. Walters,* 699 S.W.2d 939 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.) ($10,000 compensatory damages, exemplary damages $40,000); *Delta Drilling Co. v. Cruz,* 707 S.W.2d 660 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) ($1,910,450 compensatory damages, exemplary damages $6,000,000).

We have heretofore discussed the facts of this case at length. It would only be redundant to discuss the facts again.

When we apply the guidelines set forth in *Alamo Nat. Bank,* to the facts of this case, we find that the exemplary damages awarded by the court are not excessive, and we so hold.

Tracy's point of error 36 is overruled.

Tracy lastly contends that the trial court erred in taxing all costs against him because no relief was afforded to Anita individually, or to High Tea or Dennard.

The record does not support Tracy's contention. Anita sought and received injunctive relief. No relief was sought against High Tea or Dennard except AAI's petition requested that a receiver be appointed. This part of the suit was severed. High Tea and Dennard were only nominal defendants and they sought no relief. The facts make it abundantly clear that this was primarily a suit between AAI and Tracy. AAI prevailed and Tracy lost. We perceive no valid reason why Tracy should not pay the costs.

Tracy's point of error 25 is overruled.

In two-cross points of error, AAI alleges that this Court erred in reinstating Tracy's appeal and allowing Tracy to file a supplemental transcript.

On November 16, 1990, this Court dismissed Tracy's appeal for want of jurisdiction because the record did not reflect that he had timely filed his appeal from the trial court's judgment signed May 30, 1990. Thereafter, on November 30, 1990, Tracy timely filed his motion to reinstate his appeal. In that motion, he stated that the clerk of the district court had not included in the transcript sent to this Court all the documents he had requested, especially a copy of his petition for bankruptcy filed June 5, 1990, and a copy of the bankruptcy court's order dated August 3, 1990, lifting its stay order to allow Tracy to perfect his appeal in this suit. Attached to the motion was a sworn affidavit of Tracy's attorney stating the above facts were true. Also attached to the motion were certified copies of Tracy's petition for bankruptcy and the bankruptcy court's order modifying its automatic stay.

Considering the above new additional facts, this Court, on December 6, 1990, withdrew its order of November 16, 1990, dismissing this appeal and reinstated the appeal.

Section 362(a) 11 *U.S.C.* provides that when a petition in bankruptcy is filed, it operates as an automatic stay against a commencement or continuation of any judicial, administrative, or any other proceeding against a debtor. Any actions taken in violation of the automatic stay, including judgments or other court actions are void. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). An appeal is a continuation of judicial action so it is automatically stayed if it is against the debtor. *See Matter of Continental Airlines*, 928 F.2d 127, 128–129 (5th Cir.1991).

In the present case, Tracy was the debtor in the trial court and even though he is the Appellant in this case, he is still considered the debtor *American Precision Vibrator Co. v. National Air Vibrator Co.*, 771 S.W.2d 562 (Tex.App.—Houston [1st Dist.] 1989, no writ). Acts of a Defendant–Appellant to prosecute its appeal are not outside the scope of a Section 362 stay. *See Cathey v. Johns–Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir.1983), *cert. denied*, 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed. 2nd 740 (1986).

On June 5, 1990 when Tracy filed his petition in bankruptcy an automatic stay prevented him from perfecting his appeal in this case until such time as that stay was lifted by the bankruptcy court. The court's stay was lifted on August 3, 1990 and Tracy proceeded with his appeal in this case.

AAI's contention that this Court added to the trial court's record when we considered Tracy's petition and the bankruptcy court's order lifting its stay is misplaced. When Tracy filed his petition to reinstate and included certified copies of his bankruptcy petition and the bankruptcy court's order lifting its stay, he placed this Court on notice of the bankruptcy proceeding and that notice became a part of this Court's record. Section 362(a) of the BANK-

RUPTCY CODE is applicable to all courts, appellate and trial courts. Thus, this court was required to take notice that Tracy could not prosecute his appeal between June 5, 1990 and August 3, 1990, and his appeal was timely perfected.

AAI's next contends that this Court erred in permitting Tracy to supplement the record. We find no merit to this contention because Tracy did file a motion with this Court to allow him to supplement the record. AAI's first two cross-points of error are overruled.

AAI lastly contends that the statement of facts labeled "Injunction Hearing" should be struck because it was not a part of the record and was marked "not filed." We agree and have not considered its content in this appeal. We order that the statement of facts labeled "Injunction Hearing" be struck.

The portion of the trial court's judgment awarding damages to AAI on the Dennard transaction is reversed and judgment is rendered that AAI take nothing on that transaction; and the portion of the trial court's judgment awarding damages to AAI of $508,000.00 on the High Tea transaction is reformed and AAI is awarded damages of $300,000.00. In all other respects the judgment of the trial court is affirmed.

This cause is remanded to the trial court to compute the proper amount of pre-judgment interest and total amount of damages to be recovered by Annie's Attic, Inc.

Costs of this appeal are charged one-half to Robert L. Tracy and one-half to Annie's Attic, Inc.