# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00048-CV

**Loretta Conly Bascom, Appellant**

**v.**

**Texas Department of Human Services and Texas
Workforce Commission, Appellees**

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 13,880, HONORABLE BOBBY L. CUMMINGS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The Texas Department of Human Services ("the Department") terminated the employment of Loretta Conly Bascom ("Conly").[1] The Texas Workforce Commission ("the Commission") denied her request for unemployment benefits. Conly sought judicial review of the Commission's decision. The district court affirmed the Commission's order. Conly raises various issues concerning procedural mistakes by the district court and an erroneous credibility determination. Because we find the Commission's decision is supported by substantial evidence and the other issues lack merit, we affirm the judgment.

---

[1] Appellant filed suit as Loretta Conly. She signed the notice of appeal as Loretta Conly Bascom. To avoid confusion, we will refer to her as "Conly" in this opinion.

## BACKGROUND

Conly worked for the Department for seven years. As a Texas Works Advisor II, she determined whether applicants were eligible for food stamps and other benefits. One of her clients was George Sanderson.

On August 3, 1998, Sanderson sold some land to Ron Bascom. Sanderson signed a statement in which he asserted, in part, the following:

> I agreed to sell 10 acres to Ron Bascom and Loretta Conley. I assume that they are married even though they have different last names. Loretta told me that their buying the land from me wouldn't have any affect on my food stamps. We made the deal and signed the papers to sell the land on August 3, 1998. In September 1998 I went to the food stamp office to report that I had received $12.00 from Ron Bascom for the first land payment (where I actually received any money) . . . . As for the sale of the property, Loretta told me that she would take care of reporting that on my case. She said that she would also report the cleaning contract. I assumed that whatever adjustments needed to be made to my case that Loretta would make them.

Richard Miller, who represented Sanderson and closed the sale, filed an affidavit in which he swore that Conly was not on the closing papers and that he did not even see Conly until after the sale. Although Bascom and Conly were not married to each other at the time of the sale, they subsequently married.

Conly states that she did not learn of the land sale until much later. She denied that Sanderson reported the change to her or that she learned about it from Bascom. She said she did not discuss her clients with anyone. She believed that Sanderson must have reported the sale to someone else in the office who told him it would not affect his food-stamp benefit; it was that person who failed to report the sale at the time. Conly asserted that when she learned of the sale on September

2

28, 1998, she reported it. She noted that Sanderson failed to file any of the required paperwork regarding the sale. She said the report came too late in the benefits cycle to affect his October benefits because the reporting deadline was September 18, 1998.

Conly's supervisor recommended her dismissal for violation of several work rules. Her supervisor found that she failed: (1) to maintain conduct that does not interfere with the proper performance of duties, office operations, or department goals and objectives; (2) to adhere to the standards of conduct in the Department's handbook; (3) to report information that could result in a client's ineligibility; and (4) to comply with department rules, regulations, and policies—specifically, taking actions on reported changes that affect the eligibility of or the amount of benefits accorded to a client.

Before the Commission, Conly complained that she was being set up for various reasons. She said that she had no motivation to hide Sanderson's additional income—his being given extra food stamps did not benefit her. Rather, Sanderson would benefit from her termination because without her income Bascom would default on the payments, and Sanderson could foreclose on the land after Bascom had paid the back taxes. Conly also contended that Sanderson is not credible, in part because he wears foil on his head to protect himself from satellites. She alleged that a lower-paid worker would benefit by taking her job, and that their boss would benefit because he was having a romantic relationship with that worker.

The Commission denied Conly unemployment benefits, concluding that she was terminated for misconduct. *See* Tex. Lab. Code Ann. §§ 201.012(a), 207.044(a) (West 1996). The statute defines misconduct as "mismanagement of a position of employment by action or inaction,

3

neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees." *Id*. § 201.012(a).

Conly challenged the Commission's decision in the district court, contending that the decision was based on perjury. She also argued that the overwhelming evidence weighed against the Commission's decision. She asserted that she did not commit misconduct and that the rules she was alleged to have violated did not apply. The district court affirmed the decision, concluding that it was supported by substantial evidence.

## DISCUSSION

Conly appeals, raising several issues. She complains that the court unfairly denied her right to a jury trial. She complains that the court improperly denied her the opportunity to make an opening statement. She complains that the court erred by disqualifying her expert witness. She complains that the court proceeded to hear the appeal without ruling on her motion to exclude the administrative record, which was admitted in the hearing. She alleges that the court erred by finding Sanderson credible. She asserts that it is a conflict for the Commission to referee claims involving the Department because both answer to the attorney general. She believes that *pro se* litigants should be given more latitude and assistance from the bench. Finally, she complains of breaches of decorum by the court staff.

Decisions by the Commission regarding benefit payments are subject to trial *de novo* review in which the district court determines whether substantial evidence supports the Commission's ruling. *See* Tex. Lab. Code Ann. § 212.202(a) (West 1996); *Mercer v. Ross*, 701

4

S.W.2d 830, 831 (Tex.1986).  The Commission's ruling carries a presumption of validity, and the party seeking to set aside the Commission's decision has the burden to show that it was not supported by substantial evidence.  *Mercer*, 701 S.W.2d at 831.  Under the substantial evidence standard of review, the issue is whether the evidence introduced before the district court shows facts in existence at the time of the Commission's decision that reasonably support the decision.  The reviewing court may not set aside a Commission decision merely because it would reach a different conclusion.  *Id*.  It may do so only if it finds that the Commission's decision was made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious.  *Id*.

*Jury Trial*

Conly complains that the court erred by denying her a jury trial and should not have denied her motion while she was in the hospital.  As a matter of law, she was not entitled to a jury trial in this type of case.  Review of a decision on the substantial-evidence standard is a legal determination that is not suited for a jury.  *See Texas Employment Comm'n v. Child, Inc.*, 738 S.W.2d 56, 58-59 (Tex. App.—Austin 1987, writ denied); *see also Firemen's & Policemen's Civ. Serv. v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984); *Texas Co. v. Texas Employment Comm'n*, 261 S.W.2d 178, 183 (Tex. Civ. App.—Beaumont 1953, writ ref'd n.r.e.).

Further, the Texas Constitution guarantees the right to a jury trial in all types of causes, or analogous actions, that existed when the constitution was adopted in 1876.  *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 636 (Tex. 1996).  The unemployment compensation system was created in 1936.  Act of Oct. 27, 1936, 44th Leg., 3d C.S., ch. 482, § 1, 1936 Tex. Gen. Laws 1993.  Neither unemployment benefits nor the judicial review of

5

administrative decisions existed in 1876. There is no showing that unemployed workers previously had any right to payment by the government based solely on their not being employed. There is thus no right to a jury trial for the review of the denial of unemployment benefits. The court did not err by denying Conly's request for a jury.

*Opening statement*

Conly complains that she was denied the opportunity to make an opening statement. The record does not support her assertion. She made a statement before the presentation of the evidence. The court asked if she had witnesses to call; she responded affirmatively, the witnesses were placed under the rule, and testimony began.

Conly was not directly told to cease her statement, nor did she object to any indirect curtailment of her statement. She has not shown that she preserved this complaint for review. *See* Tex. R. App. P. 33.1(a).

More important, Conly has not shown that she was harmed by any curtailment of her statement. The opening statement is not evidence, and the opening statement she asserts in her brief that she would have made at trial includes assertions not supported by the evidence offered or admitted at the hearing. We find that Conly has not shown that any curtailment of her opening statement probably caused the rendition of an improper judgment or prevented her from properly presenting her appeal to us. *See* Tex. R. App. P. 44.1.

*Recusal of a judge*

Conly complains about the judge who was assigned to hear her case. She says she would have requested recusal if she had known who the judge was. Yet, there is no indication in the

6

appellate record that she ever attempted to use the procedures available under the rules of civil procedure to have the judge removed. *See* Tex. R. Civ. P. 18a. Nor is it apparent that any such request should have been granted.

### *Expert witness*

Conly complains of the disqualification of witness Rebecca Gerra[2] as an expert. Gerra was a long-time supervisor in the Department. She did not have personal knowledge of the circumstances surrounding Conly's dismissal. The Commission objected to her ability to testify regarding what the Department did when training all of its employees. The court sustained the objection.

Conly complains that Gerra knew what information Conly received at training because Gerra trained Conly. The exclusion of Gerra as an expert blocked only testimony regarding her opinions or beliefs generally regarding such issues as the Department's training practices. *See generally* Tex. R. Evid. 702. Her exclusion as an expert did not block testimony about specific events of which Gerra had personal knowledge.

Further, we are not permitted to reverse for the exclusion of evidence unless the party whose evidence was excluded makes an offer of the evidence that was excluded. *See* Tex. R. Evid. 103; *see also* Tex. R. App. P. 33.1. The record does not contain such an offer of proof.

---

[2] This witness's last name is spelled "Gerra" in the reporter's record, but is spelled "Guerra" in other parts of the record.

*Admission of administrative record*

Conly filed a motion seeking to have the district court hear her case "strictly *de novo*." Specifically, she sought to prevent admission of the administrative record into the district court record because she believed that documents within it were tainted by perjury, forgery, and misrepresentation. She believed that the administrative referee erred by admitting paperwork the Department submitted because the papers differed from those sent to Conly.

We review the decision to admit evidence under an abuse of discretion standard. *See McEwen v. Wal-Mart Stores, Inc.*, 975 S.W.2d 25, 27 (Tex. App.—San Antonio 1998, pet. denied); *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 531 (Tex. App.—Tyler 1992, writ denied). A trial court abuses its discretion only if it acts unreasonably or without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

At the trial *de novo* review of the Commission's decisions regarding benefit payments, the district court must determine whether substantial evidence existed at the time of the Commission's decision to support that decision. *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998). Although the district court is not to decide based solely on the administrative record, the court may consider the record if it is admitted pursuant to the rules of civil procedure. *Nuernberg v. Texas Employment Comm'n*, 858 S.W.2d 364, 365 (Tex. 1993).[3]

---

[3] In *Neurnberg*, the court held that a copy of the administrative record attached to a motion for summary judgment was not competent evidence. *See Neurnberg v. Texas Employment Comm'n*, 858 S.W.2d 364, 365 (Tex. 1993). Here, although the record was offered as a single exhibit rather than individual documents, it was admitted at trial, subject to the rules of evidence, without objection. We conclude that, under these circumstances, it is competent evidence.

We cannot say that the district court abused its discretion by determining that, in order to review the Commission's decision, it could, as part of its review, consider the evidence that was before the Commission. Conly was free to present evidence and argument challenging the reliability of evidence in the administrative record.

*Credibility determination*

Conly contends that the court erred by finding Sanderson's affidavit credible—a decision she describes as "the closest thing we have that might be construed as a finding of fact." The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Cohn v. Commission for Lawyer Discipline*, 979 S.W.2d 694, 696 (Tex. App.—Houston [14th Dist.] 1998, no pet.). We will not substitute our judgment for that of the district court merely because we might reach a different conclusion. *Id.*; *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 195 (Tex. App.—Austin 1992, no writ).

Conly argues that, although Sanderson's affidavit appears credible and coherent, he must have problems because he has received food stamps for seven years. She also argues that his statement to her before a client meeting that he had walked 19 miles into town shows that he is not credible. She alleges that Sanderson wears foil hats to deter satellites from tracking his whereabouts. Further, Conly argues that the person in her office who Sanderson alleges was aware of the sale was actually a co-worker, not Conly.

Conly points to Bascom's testimony, "I'm not saying what he says is credible," as a challenge to Sanderson's credibility. Bascom made this statement while trying to show that his testimony did not violate the hearsay exclusion because Sanderson's statements were not being

9

offered for the truth of the matter asserted.  *See* Tex. R. Evid. 801(d), 802.  Although Bascom may have had an opinion regarding Sanderson's credibility, this statement at the hearing is not an assessment of Sanderson's credibility.

On this record, we cannot say that the district court erred by crediting Sanderson's affidavit.

### *Conflict of interest*

Conly contends that there is a conflict of interest in having the Commission review decisions made by the Department because they are both responsible to the attorney general.  She argues that this arrangement gives the Department insider knowledge.

Although all three entities are in the executive branch of government, the Commission and the Department are not responsible to the attorney general.  The Commission and the Department have both been represented in this appeal by sections of the attorney general's office—the Commission by the taxation section and the Department by the general litigation section.  But the Commission and the Department are executive entities whose leaders are appointed by the governor or his appointees, while the attorney general is an executive officer elected by the voters.

The attorney general is a constitutionally created office, one of six officers comprising the executive department.  *See* Tex. Const. art. IV, § 1.  The attorney general is chosen in an election by the qualified voters of Texas.  *See id*. § 2.  The attorney general represents the State and performs all other duties required of the office.  *Id*. § 22.

The Department is a statutorily created entity composed of the Texas Board of Human Services, the Commissioner of Human Services, and other officers and employees.  *See* Tex. Hum.

10

Res. Code Ann. § 21.001 (West 2001). The board members are appointed by the governor. *Id*. § 21.003. The Commissioner of Human Services is "employed by the commissioner of health and human services," *id*. § 21.004, who in turn is appointed by the governor. Tex. Gov't Code Ann. § 531.005 (West 1998). The Department is responsible for administering public assistance programs for needy persons as defined by statute. Tex. Hum. Res. Code Ann. § 22.001.

The Commission is a state agency established to operate an integrated workforce development system and to administer the unemployment compensation insurance program. *See* Tex. Lab. Code Ann. § 301.001 (West 1996). It is comprised by three commissioners who are appointed by the governor. *Id*. § 301.002. The labor code provides that, when the Commission's decision is challenged, the Commission is represented by an attorney appointed by the attorney general. *Id*. § 212.207 (West 1996).

Thus, neither the Commission nor the Department reports to the attorney general. The Department was represented by the attorney general's office at the administrative hearing before the Commission. Only when Conly sought judicial review did the attorney general's office begin representing the Commission; furthermore, the Commission was represented by a different section of the attorney general's office than that representing the Department. We find no conflict of interest that adversely affected Conly.

***Special latitude or assistance to* pro se *litigants***

Conly asserts that the court should have given her more assistance and latitude because she is not an attorney. Courts have consistently rejected any requirement that special allowances be made for *pro se* litigants. *See Scoville v. Shaffer*, 9 S.W.3d 201, 204 (Tex. App.—San

11

Antonio 1999, no pet.); *Bailey v. Rogers*, 631 S.W.2d 784, 786 (Tex. App.—Austin 1982, no writ). We are not persuaded that we can make an exception to that line of cases here.

### Breaches of decorum by court staff

Conly complains that, during a recess, a bailiff yelled at her and Bascom to stop talking to each other. She asserts that this so unnerved her that she was unable to proceed effectively.

The record does not reflect any yelling or involvement by the bailiff. The yelling allegedly occurred during a recess, and no mention of it was made when the hearing resumed. The reporter's record shows that, after a recess during Bascom's testimony, the Commission's attorney reported the conversation between Conly and Bascom as a possible violation of the rule against discussing testimony outside the courtroom; he requested sanctions. Conly and Bascom explained that they were discussing how to proceed with her questioning of him so as to lay a proper foundation for certain testimony. The court denied the request for sanctions. Conly said she did not know what to ask Bascom; after the attorneys for the Commission and the Department declined to cross-examine Bascom, the court told him to step down. Bascom replied that he had not heard Conly rest her case yet. Conly then asked the court if she could make a closing statement. Bascom interjected, "No. You don't know what to do and they're going to bully you around." Conly offered to read the Commission's opinion denying her benefits, but the Commission offered the certified copy of the opinion as part of the administrative record, which the court admitted. Conly then proceeded to read the opinion while inserting her arguments against its findings and conclusions.

12

The record reflects no reversible error. We cannot reverse for an alleged breach of decorum that is not shown in the record. *See* Tex. R. App. P. 33.1(a). Nor is the Commission's report of the incident and request for sanctions a valid basis for reversal. There is no showing on the record that the Commission's attorney acted inappropriately in reporting the conversation; moreover, the court overruled the request for sanctions. Even if events unsettled Conly, she did not request additional time to collect herself. Although she did not continue questioning Bascom, she did go through the Commission's opinion and discuss her disagreements with it. The record reflects no failure by the court to grant any requested relief.

## CONCLUSION

We resolve all issues presented here in favor of the judgment. Because Conly has failed to show that the judgment is not supported by substantial evidence, we affirm the district court's judgment affirming the Commission's denial of benefits.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: August 14, 2003

13