**Robert Kendall BELCHER, Appellant,**

**v.**

**Sonia Su BELCHER, Appellee.**

**No. 08–90–00196–CV.**

Court of Appeals of Texas, El Paso.

April 3, 1991.

Rehearing Overruled April 3, 1991.

David W. Lindemood, Brockett & Lindemood, Midland, for appellant.

John E. Gunter, Midland, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This court's opinion issued on March 6, 1991, is withdrawn and the following is substituted therefor. Appellant's Motion for Rehearing is overruled.

In a Family Code Motion to Modify case, the trial court ordered a substantial increase in the monthly child support. The obligor brings this appeal complaining primarily of a misapplication of the child support guidelines by the trial court. We affirm.

Robert Kendall Belcher (Robert), Appellant, and Sonia Su Belcher (Sonia), Appellee, were divorced on July 30, 1984. The divorce decree set the amount of child support for the three children of the couple at $300.00 per month for each child. Robert was involved in a bankruptcy proceeding at that time. A Motion to Modify this amount was filed by Sonia on September 28, 1989. After a hearing on the motion, the child support order was increased to $700.00 per month for each child beginning on February 1, 1990. The modified order also obligated Robert to continue to provide health and hospitalization insurance for the children. At the time of the hearing, Courtney was 13, Leslie was 11 and Robert was 10. The trial judge filed Findings of Fact and Conclusions of Law to support her order.

Robert testified at the hearing that he earns approximately $7,000 a month. He also receives additional income which the court found to increase his net monthly resources to a total of more than $10,000 or $12,000 a month. Sonia testified that although she previously worked as a secretary, she was currently a full-time student pursuing a teaching certificate. She received approximately $168.00 a week in unemployment benefits while she was a stu-

dent, but these were limited to a total of 52 weeks.

As proof of the needs of the children, Sonia presented through her testimony two exhibits showing the current expenses for herself and the three children (Exhibit 1) and what she would like to spend on the children to improve their life style (Exhibit 2), such as jazz, ballet, karate, gymnastics, flute and piano lessons. Although there is some question as to the status of the two exhibits showing her current expenses and her desired future expenditures for the children if given sufficient support (the exhibits were admitted and then at least one of them was "excluded" after Robert's motion was "sustained"), Sonia testified at length as to the actual and estimated expenses and needs of the children. She testified that they had done many of those things in the past, particularly during the marriage, but that there was not enough money for these lessons now. She also testified that their son was a slow learner, that he had been tutored in the past, and that she believed that he would benefit from having a tutor again. Clothing and dental needs of the children had also increased. Two of the three children went to private schools during their parents' marriage and continued to do so at the time of the hearing. Sonia and the children were living in a three bedroom house which rented for $850.00 a month. In August of 1988, she and Robert agreed that he would pay the rent and an additional $250.00 a month for utilities for a year. The basis for this agreement was that Robert would live there also in an attempted reconciliation starting in January 1989. Robert stopped paying for these expenses in August of 1989. The evidence also showed that Robert had been voluntarily paying for expenses such as summer camp, country club membership and use, dental care and life insurance for the children.

The parties agree that Robert should pay 30 percent of the first $4,000.00 his net monthly resources in child support under the guidelines set forth in Tex.Fam.Code Ann. § 14.055 (Vernon Supp.1991), and that an award of additional child support may be appropriate. The controversy arises

over the manner of determining what percentage of his income over $4,000.00 month should be paid in support of the children.

■ In Point of Error No. One, Robert contends that the trial court, by raising the child support to $700.00 per month per child, incorrectly applied the child support guidelines. In his second point, he asserts that there was either no evidence or insufficient evidence of the children's needs to exceed the statutory presumption of 30 percent of the first $4,000.00 of his net monthly resources. Under the third point, he contends that the court erred by not considering Sonia's voluntary unemployment, and in his fourth point, he claims that since there was either no evidence or insufficient evidence to support its order increasing the child support to $2,100.00 per month, the court erred in denying his motion for new trial. To all of these contentions, Sonia replies that the guidelines establish a floor rather than a ceiling for child support payments where the obligor's net resources exceed $4,000.00 per month.

The best interest of the child is the primary consideration in questions of support. Tex.Fam.Code Ann. § 14.07(a) (Vernon 1986). The child support guidelines are now set out in Tex.Fam.Code Ann. § 14.055 (Vernon Supp.1991). Where the obligor's monthly net resources are $4,000.00 or less, Section 14.055(a) states that there is a rebuttable presumption that an order for periodic child support which follows the schedule in Section 14.055(b) is both reasonable and in the best interests of the children. In that situation, the schedule prescribes support for three children equal to 30 percent of the obligor's monthly net resources. In situations where the obligor's monthly net resources exceed $4,000.00 per month, Section 14.055(c) requires the court to apply the same percentage set forth in the guidelines to the first $4,000.00, the presumption being applicable to that amount, and then "[w]ithout further reference to the percentage recommended by the[se] guidelines, the court may order additional amounts of child support as proven, depending on the needs of the child at the time of the order." Under Section 14.052(b), the court, in determining an equitable amount of child support, may consider in varying from or following the guidelines, several factors, including the needs of the child and the ability of the parents to contribute to his or her support. Other "evidentiary factors" which may be considered by the court along with all "relevant factors" in deviating from the guidelines amount are set out in Section 14.054.

Robert submits that in cases such as his where the monthly net resources of the obligor exceed $4,000.00, a clear and unambiguous meaning of the guidelines section calls for a two-step procedure in which, in his case, 30 percent of the first $4,000.00 of his monthly net resources establishes the basic child support for his three children of $400.00 per month per child or a total of $1,200.00 per month, that amount being presumptively reasonable and in the children's best interests. The second step, arriving at additional child support without reference to the percentage guidelines, is to be taken only to the extent that evidence of the needs of the child or children at the time of the order establishes a need for additional support, Section 14.055(c), but the court may consider the ability of the parents to contribute as well as the other factors set forth in Section 14.052.

Robert argues that in this case, the judge simply determined that he could afford to pay 30 percent of the additional income and still be comfortable rather than basing the increase on the proven needs of the children. His argument assumes that the court took 30 percent of $7,000.00, the amount he initially testified was his monthly net resources, to arrive at the $2,100.00 figure.

In support of this position, he refers to a post-hearing letter from the trial judge to Sonia's attorney in which the judge stated, "Mr. Belcher testified that he earned about $7,000.00 a month. Even after paying the increased child support he will have enough income to live comfortably." He also refers to the judge's statements made early in the hearing: "I think we try to establish what the possessory conservator is earning and then take a percentage of that. And it

may be more than you ask, or it may be less. And it may be more than you need or less than you need. But I think it's based now upon his ability to contribute" and "[i]t's not her needs so much as his ability now." He also cites finding number 6 in the Findings of Fact and Conclusions of Law which reads, "Applying the guidelines set forth in Section 14.053–14.055, Texas Family Code, ROBERT KENDALL BELCHER can well pay $700.00 per month per child, for a total of $2,100.00 per month in child support." Robert omits mention of finding number 5 wherein the judge finds that "[t]he monthly net resources of ROBERT ... exceed $10,000.00 per month. His present net monthly income from his payroll check alone is $7,400.00 per month. He has additional income from interest, dividends, rents and royalties which increase his net monthly resources to exceed $12,000.00 (sic) per month."

While the judge's trial statements indicate some confusion over the proper criterion for awarding additional child support based on the obligor's net resources in excess of $4,000.00, and her findings and conclusions are unclear as to whether she determined that Robert's monthly net resources were in excess of $10,000.00 or $12,000.00, she clearly found that they exceeded $7,000.00. Robert's 1988 tax return supports a finding that Robert had net resources of at least $10,000.00 per month, giving him the benefit of every uncertainty when the definition of net resources in Section 14.053(b) is applied to his return. Since 30 percent of $10,000.00 would be $3,000.00, it is obvious that the judge did not apply that percentage to his net resources in arriving at the $2,100.00 per month total. Moreover, the fact that the amount of the new child support happened to be equal to the same percentage of the net resources above $4,000.00 that applied to $4,000.00 or less would not be impermissible unless it was clear that the court arbitrarily applied the same percentage without considering the needs of the child or children and the other factors.

■ Neither the findings of fact nor the child support order detail why the trial judge determined that $700.00 per child was an appropriate amount. Neither comply with the requirements of Section 14.057 with regard to findings. Although Robert did request in writing on January 29, 1990 that specific findings be made in accordance with Section 14.057, which requires that the request be made within ten days of the hearing, his request was timely since, although it was filed on January 29, the eleventh day after the hearing, January 28 fell on a Sunday. Tex.R.Civ.P. 4. However, any error in connection with the failure of the court to comply with Section 14.057 has been waived by Robert's failure to raise the issue by appropriate point of error. Tex.R.App.P. 74; *Courtney v. City of Sherman*, 792 S.W.2d 135 (Tex.App.— Dallas 1990, no writ). Although Robert did file an objection to Proposed Finding of Fact No. 7, wherein the court found that the needs of the children had changed since the signing of the decree, he did not object to Finding of Fact No. 6 in which the court found that by applying the guidelines, Robert could "well pay $700.00 per month per child, ..." and he did not request any additional findings to those set out in the original findings of fact and conclusions of law filed by the court on March 12, 1990. Tex.R.Civ.P. 298. Under these circumstances as they apply to the application of the correct guidelines, the appellate court must presume that any omitted unrequested elements, where supported by the evidence, were found by the trial court in support of the judgment rendered. Tex.R. Civ.P. 299. Since it is unclear from the record exactly how the trial court arrived at the new child support of $700.00 per month per child, we must presume that the court applied the guidelines in accordance with Sections 14.052–.057. Point of Error No. One is overruled.

■ Under his second point of error, Robert asserts that there was no evidence or insufficient evidence to support increasing child support above the statutory presumptive amount, and under his fourth point, he claims that the court erred by denying his motion for new trial for the same reasons. When presented with a "no evidence" challenge, the appellate court

should consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America,* 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford,* 726 S.W.2d at 16.

■ When a factual insufficiency challenge is brought, the court must first examine all of the evidence, *Lofton v. Texas Brine Corporation,* 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corporation,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). *State v. Arnold,* 778 S.W.2d 68 (Tex.1989). In reviewing a factual insufficiency point, the appellate court considers all the evidence in the record relevant to the finding that is challenged, both that tending to prove and that tending to disprove the fact, and the verdict may be set aside only to prevent a manifestly unjust result. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ In order to modify a child support order, the movant must show that there has been a material change in the circumstances of the children or the parents since the time the order was entered. *Moreland v. Moreland,* 589 S.W.2d 828 (Tex.Civ.App.—Dallas 1979, writ dismissed). The trial judge found that the circumstances of the parties had materially changed, and the parties do not challenge this finding on appeal. The trial court has wide discretion in establishing and modifying child support obligations and its order

should not be disturbed on appeal unless there has been an abuse of discretion. *Anderson v. Anderson,* 770 S.W.2d 92, 94 (Tex.App.—Dallas 1989, no writ); *Carpenter v. White,* 624 S.W.2d 618, 619 (Tex.App. —Houston [14th Dist.] 1981, no writ).

■ In considering a requested increase in child support, the ability of a parent to pay more child support than is currently being paid is not controlling. The determination of the amount to be paid must reflect consideration of both the ability of the parent to support the child and the standard of living that the family and the child are accustomed to and expect to maintain after the divorce. *Bacon v. Kouri,* 696 S.W.2d 599 (Tex.App.—Houston, [14th Dist.] 1985, no writ). The amount should be commensurate with the ability of the parent to pay, but should not be enough that the obligor is denied necessary living expenses. *Sohocki v. Sohocki,* 730 S.W.2d 30 (Tex.App.—Corpus Christi 1987, no writ).

■ Contrary to Robert's assertions, "needs of the children" is not based solely on current expenditures for necessities, but in addition to monthly net resources, must take into consideration ability to pay and the lifestyle of the family and particularly of the obligor. *Anderson,* 770 S.W.2d at 95, 96. *See Phelan v. Taylor,* 627 S.W.2d 852, 854 (Tex.App.—Fort Worth 1982, no writ).

The mental and physical improvement activities which would constitute a need of the children and would justify an increase in support, do not represent lofty future plans that Sonia has for her children. These are normal activities for children of their ages whose parent(s) has adequate means, which Sonia testified the children have requested that they be able to do and which were a part of a lifestyle they enjoyed during their parents' marriage. The evidence was also sufficient to show that Robert could supply the additional money without creating an economic hardship for him. Considering all of the evidence in the record, there was sufficient evidence to support the order increasing the amount of

support. Points of Error Nos. Two and Four are overruled.

■ In Point of Error No. Three, Robert complains that the trial court failed to consider the factor of Sonia's voluntary unemployment and that this failure was an abuse of discretion. Contrary to this assertion, the court found specifically that, "SONIA SU BELCHER is attending college toward a teaching certificate, draws unemployment benefits, and is unable to meet the necessary needs of the minor children unless this child support increase is granted by the Court[,]" which means that although the trial judge did consider Sonia's unemployment, it was not something that weighed heavily in Robert's favor.

Section 14.054 of the Family Code provides:

> In making its final determination, the court shall consider all relevant factors, including but not limited to:
>
> (1) [T]he amount of the obligee's net resources, including the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn because the obligee is intentionally unemployed or underemployed....
>
> . . . . .
>
> (15) [A]ny other reason or reasons consistent with the best interest of the child, taking into consideration the circumstances of the parents.

Sonia admitted that she voluntarily chose not to work in order to return to school, and that this decision had resulted in some financial difficulty. Her only income other than the child support was the $168.00 a week unemployment compensation. She testified that in the last six years she had worked as a secretary and taught as a substitute teacher between secretarial jobs. She testified that she had been laid-off from jobs related to the oil industry on three separate occasions and that there were not many jobs available in that field. She also testified that she would lack fifteen semester hours to complete a teaching certificate after the Spring 1990 semester, that she had attempted to substitute teach on a part-time basis but that was impossible because of her school schedule and that she was also working toward a real estate license that would enable her to get a job in the summer.

Under Section 14.054, voluntary unemployment is an evidentiary consideration. Again, Robert having failed to request additional findings under Tex.R.Civ.P. 298, the omitted unrequested evidentiary details will be presumed found in support of the judgment. *Ervin v. Ervin,* 624 S.W.2d 264, 266 (Tex.App.—Eastland 1981, writ dism.); Tex.R.Civ.P. 299. Moreover, we believe the intent of the legislature in enacting Section 14.054(1) was to prevent an obligee from intentionally remaining unemployed or underemployed in order to gain an increase in child support, not to prevent an obligee from seeking to improve him or herself educationally so that he or she can hold a better or a permanent job. Sonia's circumstances are distinguishable from a situation in which a woman decides on her own that her children need a full-time mother and quits working. Her unemployment was for a finite period of short duration while she completed her education which would presumably enable her to obtain steady and permanent employment. The evidence shows that she intended to maintain a full-time job as soon as she received her teaching certificate. Point of Error No. Three is overruled.

Judgment of the trial court is affirmed.