In the Interest of Joshua Neal
MARTIN, a Minor Child.

No. 06–93–00093–CV.

Court of Appeals of Texas,
Texarkana.

Submitted May 10, 1994.

Decided July 26, 1994.

Rehearing Overruled July 26, 1994.

532

Don Cooksey, Texarkana, for appellant Gary L. Burleson.

John C. Hawkins, Jr., Child Support Contract Atty., Child Support Enforcement, Texarkana, Leslie L. McCollom, Asst. Atty. Gen., Austin, for appellee Attorney General of Texas On Behalf of Itself & Mary Ruth Martin.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Gary Burleson appeals from a district court judgment declaring him the father of a son born to Mary Martin and ordering him to pay child support.

Burleson contends that the district court improperly limited cross-examination, that a paternity test should not have been admitted in evidence, that the trial judge improperly commented on the evidence, and that the child support is supported by legally insufficient evidence. We overrule these contentions and affirm the judgment.

The evidence shows that Burleson and Martin had a sexual relationship during and after Burleson's junior year in high school. There is a dispute as to when the relationship ended. Martin's child was born on May 22, 1985.

The Attorney General brought a paternity suit against Burleson. The jury found that Burleson was the biological father of the child, and the trial court ordered Burleson to pay current and retroactive child support and one half of the child's health insurance costs.

■ Burleson first contends that the trial court improperly limited his right to cross-examine Martin about her sexual conduct.

The court limited questions to activity that occurred within a period of forty-five days before and after the estimated date that the child was conceived. Burleson argues that this was improper because it denied him the right to full and effective cross-examination of a party to the suit.

From the evidence, the court concluded that the child was full term when born. From that conclusion, he estimated that a period of forty-five days before and after that time constituted the only time during which the child could have been conceived, and limited evidence of Martin's sexual conduct to that ninety-day time span. That determination, on which the other evidentiary decisions were based, was in the nature of judicial notice, although the court apparently did not make the determination pursuant to TEX. R.CIV.EVID. 201.[1] Realizing that the question of when conception could possibly have taken place would be a consideration in the trial, the trial court discussed the matter with a physician before the trial began and based his determination on that discussion. Had the trial judge indicated he was taking judicial notice, then Burleson could have had a hearing on the propriety of taking judicial notice and the matter noticed. What the court did seems closer to fact gathering than to taking judicial notice. In any event, Burleson did not object to the court's consulting the physician, did not request a hearing, and did not show that he was harmed in any way. Thus, nothing has been preserved for review on that point. TEX.R.APP.P. 52.

Burleson does, however, contend that his substantive right to establish a defense through cross-examination was violated by

---

1. TEX.R.CIV.EVID. 201 provides:

(a) **Scope of Rule.** This rule governs only judicial notice of adjudicative facts.

(b) **Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) **When Discretionary.** A court may take judicial notice, whether requested or not.

(d) **When Mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) **Opportunity to Be Heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) **Time of Taking Notice.** Judicial notice may be taken at any stage of the proceeding.

(g) **Instructing Jury.** The court shall instruct the jury to accept as conclusive any fact judicially noticed.

the ruling limiting his examination to the ninety-day time period. *See CNA Ins. Co. v. Scheffey,* 828 S.W.2d 785 (Tex.App.—Texarkana 1992, writ denied). Although cross-examination is a valuable right and an effective tool for producing evidence, it does not extend so far as to include irrelevant evidence. *Harrison v. Texas Employers Ins. Ass'n,* 747 S.W.2d 494, 498 (Tex.App.—Beaumont 1988, writ denied); *Mortenson v. Trammell,* 604 S.W.2d 269, 277 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.); *see Satterwhite v. State,* 499 S.W.2d 314 (Tex. Crim.App.1973). The only relevant issue in this case is whether Burleson is the father of the child. The mother's sexual activity outside the time period during which the child could have been conceived is not relevant to a determination of paternity. TEX.R.CIV.EVID. 401.

Burleson's counsel contended at oral argument that cross-examination about Martin's entire sexual and marital history would have been relevant because it would have revealed to the jury her alleged instability and lack of credibility. This argument, however, is not presented as a point of error, nor is it briefed in the points raised, so we will not address it. TEX.R.APP.P. 74; *In re R.L.H.,* 771 S.W.2d 697 (Tex.App.—Austin 1989, writ denied).

■ Burleson next contends that the court erred by refusing to allow in evidence an allegedly inconsistent statement made by Martin. The statement is in the form of a letter written by Martin to Burleson on June 11, 1984, while they were still dating.

The trial court determined that the letter in its entirety was not admissible, as reflected in a bill of exception that was created on the second day of trial and in a discussion during a later attempt to introduce the letter. The court refused to admit the complete letter because it was more prejudicial than probative. TEX.R.CIV.EVID. 403. Burleson then offered an edited version of the letter in which two offensive words in paragraph seven were excised. The court also refused to admit that version. Burleson also offered to introduce the letter without paragraph seven, but was not allowed to do so.

Martin testified that she and Burleson dated from February 1983 until November 1984.

Burleson contends that the letter amounted to an inconsistent statement because in it Martin said that they "broke up" in June 1984, which would have been outside the conception time frame established by the court—July 7, 1984 to October 8, 1984.

Burleson contends that Martin's statement in the letter that she would remove her things from his car, when considered with her testimony that she removed her things from his truck when they stopped dating, proves that their relationship ended much sooner than Martin contended at trial. Such a conclusion, however, is based on a misreading of the letter. It does not indicate that she removed her items. The paragraph to which counsel refers states: "I'll get all of my stuff out of your car tomorrow after they go to Charlie and Barbara's games. O.K.?" Martin then goes on to reiterate her feelings for Burleson and expresses her desire that they not end the relationship. Although this information would be marginally relevant to show the context of their relationship when the letter was written, it does not contradict Martin's testimony that the relationship ended several months later. It only expresses fear that Burleson's parents are going to force an end to their relationship. As the letter was not an inconsistent statement, and its prejudice outweighed any probative value, it was not error to exclude it.

Counsel also offered the letter as support for his argument that Martin had been having sexual relations with her stepfather during the time that the child was conceived. As the letter was written a month before the beginning of the conception range established by the court, even if the letter constituted an admission that Martin was having sexual intercourse with her stepfather, it does not show that she was doing so during the critical time period.

■ As to the more difficult question of whether the trial court erred by refusing to admit the letter with the offensive paragraph removed, we find that the letter's relevance is questionable. Thus, under an abuse of discretion review, we will not disturb the trial court's ruling in this matter. *Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 531 (Tex.

App.—Tyler 1992, writ denied). Even if the trial court did err by refusing to admit the evidence, to obtain reversal of a judgment based on such an error Burleson must show that the error was calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex. 1989). This evidence is not of a character that would cause the rendition of an improper verdict.

■ Burleson next contends that the trial court should not have admitted the paternity test into evidence because the proof did not establish that the test excluded 95% of the male population as required by TEX.FAM. CODE ANN. §§ 13.02,[2] 13.04,[3] 13.06.[4] The only one of these statutes that involves the admission of evidence is Section 13.06(c). It states:

> If the paternity tests show the possibility of the alleged father's paternity, the court may admit this evidence if offered at the trial. If the paternity tests show the possibility of the alleged father's paternity and that at least 95 percent of the male population is excluded from the possibility of being the father, then evidence of these facts constitutes a prima facie showing of the alleged father's paternity, and the party opposing the establishment of the alleged father's paternity has the burden of proving that the alleged father is not the father of the child.

The expert's written report stated that the tests given would exclude 98.22% of the male population.[5] The probability of paternity, according to the statistical determinations, was 99.69%. All that was required to make the test admissible was that it show the possibility of Burleson's paternity. The test does so; consequently, the court properly admitted it

into evidence. TEX.FAM.CODE ANN. § 13.06(c).

Burleson also argues that the underlying basis for the admission of the test was inadequately proven because the statute requires that at least 95% *of the male population* is excluded from being the biological father. He argues that the basis shown by the testimony—that the figures determined by comparison to a random testing of Caucasian males drawn from a nonscientifically selected sample—was inadequate to comply with the statutory requirement. We need not address this point, because the test is admissible if it shows the *possibility of paternity*. The first sentence of Section 13.06(c), as it existed in 1989, states that, if the paternity test shows the possibility of paternity, the court may admit the evidence. The question of whether a particular percentage of the population was excluded is used to determine whether the test data constitute a prima facie showing, thus shifting the burden of proof to the defendant. In this case, the burden of proof was not shifted. The State retained the burden of proof throughout the trial, as reflected by the jury charge. No error is shown.

■ Burleson also contends that the trial court erred by commenting on the evidence and improperly charging the jury. The challenged statement by the trial judge was made during defense counsel's jury argument. Counsel was discussing the relation of menstruation to ovulation dates and suggested that basic biology from high school taught that a person cannot conceive during a menstrual cycle. He suggested that Martin had testified that she was menstruating at the time that she had also testified that conception took place. In the midst of this discussion, the trial court commented as follows:

> THE COURT: I think the testimony was that she got off the period August

2. Act of May 29, 1989, 71st Leg., ch. 375, § 10, 1989 Tex.Gen.Laws 1479, *amended by* Act of May 28, 1993, 73rd Leg., ch. 730, § 5, 1993 Tex.Gen. Laws 2864.

3. Act of May 29, 1989, 71st Leg., ch. 375, § 12, 1989 Tex.Gen.Laws 1480, *amended by* Act of May 28, 1993, 73rd Leg., ch. 730, § 6, 1993 Tex.Gen. Laws 2864.

4. Act of May 29, 1989, 71st Leg., ch. 375, § 14, 1989 Tex.Gen.Laws 1480, *amended by* Act of May 28, 1993, 73rd Leg., ch. 730, § 8, 1993 Tex.Gen. Laws 2865.

5. The code was amended effective September 1, 1993 to require that the paternity test show that at least 99% of the male population was excluded before the burden of proof shifts to the alleged father.

seventeenth. Is that what you're talking about?

MR. COOKSEY: Well, the jury will remember.

THE COURT: I wrote it down.

MR. COOKSEY: I would object to the Court commenting on the evidence. The jury will remember and again, I would ask the Court to instruct the jury to disregard what the Court has said.

THE COURT: Alright, folks, you will disregard any comments by the Court on the evidence. It's up to the jury to determine what the facts are. Proceed.

The trial court's comment occurred after Burleson's counsel had ignored the court's order sustaining an objection to this line of argument as being outside the evidence.

The trial court did misstate the evidence, but when defense counsel objected, the court withdrew his statement and instructed the jury to disregard any comment he made and to determine itself what the facts were. We believe the jury instruction cured any possible harm caused by the court's comments. *Compare: Home Indem. Co. v. Draper,* 504 S.W.2d 570 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Brazos River Auth. v. Berry,* 457 S.W.2d 79 (Tex.Civ. App.—Tyler 1970, writ ref'd n.r.e.); *see also Crowley v. Babolcsay,* 611 S.W.2d 492 (Tex. Civ.App.—Austin 1981, writ ref'd n.r.e.); 4 McDonald's Texas Civil Practice § 21:39 (rev. 1992).

■ Burleson next contends that the trial court erred by awarding child support in an amount not supported by the record. He specifically argues that the court should not have ordered him to pay one half of the child's health insurance costs when there was no evidence to support such an order. Burleson bases his argument on the fact that, at the time of the hearing at which child support was determined, he was unemployed and had not worked for two weeks because his previous place of employment had closed.

■ In reviewing the legal sufficiency of the evidence, we apply the review standard of *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Thus, we examine the record for any probative evidence to support the find-

ing, ignoring all contrary evidence. If there is some evidence in support of the finding, it will be upheld. In this case, findings of fact were neither timely requested nor filed. In such a case, it is implied that the trial court made all the findings necessary to support its judgment. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). The order setting child support is not reversible unless Burleson has shown a clear abuse of discretion. *Worford v. Stamper,* 801 S.W.2d at 109.

There is no documentary evidence about Burleson's income, either past or present. He testified that he had been employed at various wages above minimum wage as a muffler mechanic, but that his last employer had closed his business after retiring and his previous employers had gone bankrupt. He stated that he was looking for work and that he would accept employment if he could find anything paying minimum wage. He also testified that he had payments on a mobile home that needed to be made, although he had previously said that he had no payments on the mobile home. He also testified that he had sold a truck that was paid for in order to buy a less expensive truck for which he was making payments.

The trial court set child support payments at the proper percentage of minimum wage income. There is evidence that Burleson had been employed, that he was able to work, and that he expected to obtain work. There is conflicting evidence about the extent of his liabilities. In the absence of sufficient evidence to determine the wages and salary income of the obligor, the trial court applies the presumption that they have wages or salary equal to the prevailing federal minimum wage for a forty-hour week. Tex.Fam. Code Ann. § 14.053(k) (Vernon Supp.1994). Proof that Burleson was temporarily unemployed, when set against his testimony that he had been gainfully employed for several years and had prospects for future work, does not create a situation in which no obligation may be imposed. Based on his testimony about his previous earning ability and income, and in the absence of any evidence that he is unemployable, there is at least some evidence to support the trial court's

setting of child support based on the federal minimum wage.

Burleson's argument that there was no evidence to support the imposition of an additional payment of $32.50 a month for one half of the health insurance costs of the child meets the same evidentiary standard. Based on the evidence of his past income and his contradictory testimony about his obligations on his home and vehicle, there is at least some evidence that would support a finding by the trial court that Burleson was able to pay an amount in excess of the guidelines, for a total of $120.00 in child support and an additional $32.50 per month for health insurance.[6]

For the reasons stated, the judgment of the district court is affirmed.

---

**6.** The order directs Gary Burleson to pay current child support in the amount of $100.00 per month, $20.00 per month toward retroactive child support, and $32.50 per month to provide one half of the payment for a health insurance policy for the child. The presumptively proper imposition of a 20% support payment against his net resources, using the minimum wage as a basis, would be approximately $125.00 per month. Tex.Fam.Code Ann. § 14.053(k) (Vernon Supp.1994), § 14.055(b), Act of May 12, 1989, 71st Leg., ch. 617, § 6, 1989 Tex.Gen.Laws 1038, *amended by*, Act of May 29, 1993, 73rd Leg., ch. 766, § 9, 1993 Tex.Gen.Laws 2997, and Act of May 28, 1993, 73rd Leg., ch. 798, § 5, 1993 Tex.Gen.Laws 3171.