**In the Interest of Tamara Leigh HIDALGO, A Minor Child.**

No. 06–96–00058–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 18, 1996.

Decided Dec. 19, 1996.

Gwen D. Loden, Gilmer, Rob Foster, Longview, for appellant.

Myla G. Mayberry, Melissa A. Charles, Longview, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Kelly Ridgeway appeals from a judgment determining custody of her biological daughter, Tamara Hidalgo. The judgment named Ridgeway and Margaret Williams (the child's stepgrandmother) as joint managing conservators, and the minor's stepmother, Karol Hidalgo, as possessory conservator. Ridgeway contends that the court erred in naming Karol Hidalgo as a conservator because she had no standing to even be involved in the suit, that the court erred in naming Williams (the stepgrandmother) as conservator because she had no standing to intervene in the action, that the court erred by failing to grant a writ of habeas corpus and deliver the child to Ridgeway, and that the evidence does not support the court's order denying her, as the biological mother, sole possession of the child.

The biological mother, Kelly Ridgeway, was married from 1980 to 1984 to Daniel Hidalgo. On September 3, 1983, their child Tamara Hidalgo was born. On January 4, 1984, the couple divorced, and Daniel was awarded custody of the infant child. Thereafter, Ridgeway had practically no contact with the child. The child testified that she recalled seeing her mother on only two occasions before a habeas hearing in August of 1995, and that she had spoken to her three or four times by telephone.

Daniel Hidalgo married Karol Hidalgo on October 2, 1990. Daniel died on May 14, 1995. The child continued to live with Ms. Hidalgo after her father's death. Later that

year, however, the child moved to live with her stepgrandmother, Margaret Williams. She has lived with Williams since September 10, 1995.

Ridgeway filed a petition for writ of habeas corpus on August 16, 1995, in the 307th District Court of Gregg County, demanding delivery of the child. On August 22, 1995, Hidalgo filed a petition in the 115th District Court in Upshur County, asking that she be appointed sole managing conservator and requesting that Ridgeway be ordered to make child support payments. The stepgrandmother, Margaret Williams, intervened in the custody action on November 22, 1995, asking that she be appointed as joint managing conservator of the child with exclusive rights to determine her primary residence.

The child filed a statement of first choice for managing conservator in which she named Williams as her first preference and Hidalgo as her second choice.

The court directed that a family therapist interview the parties and make recommendations. The therapist recommended that the child be placed in the care of Margaret Williams with substantial visitation availability to both Hidalgo and Ridgeway. The court ordered that Williams and Ridgeway act as joint managing conservators, with Karol Hidalgo as possessory conservator. The order also provides that Williams has the right to establish the primary residence of the child and manage the child's estate, sets out a visitation schedule for Ridgeway and Hidalgo, requires counseling for the child and Ridgeway, directs Ridgeway to make child support payments for the benefit of her offspring, orders Hidalgo to return social security benefits that she received on behalf of the child between September 1995 and April 1996 while the child was not in her possession, and directs the parties to make various payments to different attorneys.

■ Ridgeway first contends that Hidalgo had no standing to seek custody of the child. Standing to bring suit in a case involving a minor is governed by TEX. FAM.CODE ANN. § 102.003 (Vernon 1996), which provides:

> An original suit may be filed at any time by:

> . . . .

> (9) a person who has had actual care, control, and possession of the child for not less than six months preceding the filing of the petition. . . .

Ridgeway contends there is no evidence that Hidalgo had actual care, control, and possession of the child when she filed suit. She specifically contends that the child left Hidalgo's home and moved in with her stepgrandmother, Margaret Williams, before the suit was filed, thus eliminating Hidalgo's standing under the statute.

She further argues that Hidalgo did not have the care, control, and possession of the child for the requisite six months before the suit was commenced. Williams, however, testified that she had served as the child's caretaker only since September 10, 1995. The child also testified at a pretrial hearing that she had lived with Williams only since the middle of September. Hidalgo filed her original petition on August 22, 1995. At that time the child was still living with Hidalgo and had been since her father's death, so Hidalgo had standing to file suit under the statute.

■ Ridgeway also contends that Williams had no standing to intervene in the pending suit because she is not a biological relative of the child. The Family Code specifically gives standing for grandparents to bring suit individually if certain requirements are met. TEX. FAM.CODE ANN. § 102.004 (Vernon 1996). The statute does not define "grandparent," and we have found no judicial definition of the term. Subdivision (b) of Section 102.004, however, provides that the court "may grant a grandparent *or other person deemed by the court to have had substantial past contact with the child leave to intervene* in a pending suit filed by a person authorized to do so under this subchapter" (emphasis added). The evidence here shows that Williams had been close, both emotionally and physically, to the child since her birth. Moreover, the child chose Williams to be her primary caregiver. Although there is no explicit finding by the court on this matter, the evidence supports the court's implied finding that Williams, although not a biological

grandparent, was an "other person" who had sufficient past contact with the child to authorize her intervention in the suit.

■ Ridgeway argues that intervention under Subdivision (b) of Section 102.004 is limited to suits requesting *possessory* conservatorship. We disagree. Although Subdivision (a) provides that an original suit requesting possessory conservatorship may not be *filed* by a grandparent or other person, Subdivision (b) states that the court may permit a grandparent or other person with substantial past contact to *intervene* in a pending suit filed "under this subchapter." The subchapter pertains to suits seeking managing conservatorship as well as those seeking possessory conservatorship.

Ridgeway next contends that the trial court erred by failing to grant her petition for writ of habeas corpus and place the child in her control after a November 17, 1995 hearing. The petition for writ of habeas corpus was filed by Ridgeway one week before Hidalgo filed her suit affecting the parent-child relationship. A hearing was held on the habeas petition on August 25, 1995. The statement of facts from the hearing reflects that the habeas petition was disposed of by an agreed order dictated into the record in open court. Such an agreement is valid and enforceable. TEX.R. CIV. P. 11. No appeal was taken from this agreed disposition of the habeas proceeding.[1]

Ridgeway further contends that the evidence presented at the November 27, 1995 hearing was insufficient as a matter of law to keep full custody away from the biological mother because it was necessary for the other parties to show some dire emergency or imminent danger of physical or emotional harm in order to avoid the requirement of immediately returning the child to her biological parent.

An agreed order was rendered by the court and signed by counsel for the parties on September 20, 1995, in which the habeas action was consolidated into the suit involving the parent-child relationship. The court conducted a hearing on the case on November 27, 1995, and entered temporary orders

pending the trial, which was held on April 15, 1996. There was no further reference to a habeas action, and no further order has been entered involving relief in a habeas context. After the agreed order, the case was tried by the parties and the court as a suit involving the parent-child relationship.

■ The district court has the authority to issue temporary orders in modification of custody proceedings. TEX. CONST. art. V, § 8; TEX. FAM.CODE ANN. § 156.006 (Vernon 1996). Further, at the time of the hearing in November the child was over twelve years old, and she signed a document specifying her choice for managing conservator, naming Williams. The statute does not restrict a change of conservatorship in a temporary order to biological parents or relatives. TEX. FAM.CODE ANN. § 156.006(b)(3). The statute does require the court to find that the temporary order is in the best interest of the child. Such a finding is contained in the temporary order.

Ridgeway further contends there is no or insufficient evidence to support the court's order denying her sole possession of the child. The final judgment named Ridgeway as one of two joint managing conservators and provides a method for visitation and for the child to become acquainted with her biological mother. Ridgeway contends that this arrangement does not comply with the requirements of TEX. FAM.CODE ANN. § 153.131 (Vernon 1996).

(a) Unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

■ Ridgeway argues that the evidence fails to show any likelihood of significant impairment if she were given exclusive custody. The fact that a contesting third party would be a *better* custodian is not sufficient to rebut the parental presumption absent a showing of some impairment. *Lewelling v.*

1. No written order appears in the transcript.

*Lewelling,* 796 S.W.2d 164 (Tex.1990). Moreover, the cases require a nonparent to show specific acts or omissions of the parent that demonstrate a significant impairment. *Ray v. Burns,* 832 S.W.2d 431 (Tex.App.—Waco 1992, no writ).

■ In reviewing the evidence for legal sufficiency, we consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the court's finding, disregarding all evidence and inferences to the contrary. *Lewelling v. Lewelling,* 796 S.W.2d at 166. The burden of proof requires the nonparent to affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would significantly impair the child, either physically or emotionally. .

In a factual sufficiency challenge, we first examine all the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). After considering and weighing all the evidence, we set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *R.S. v. B.J.J.,* 883 S.W.2d 711, 715 (Tex.App.—Dallas 1994, no writ).

■ The situation in this case is different from the usual one, where a parent who has been either the sole caregiver or at the least a joint caregiver seeks to be appointed sole managing conservator as against a nonparent. In this case, the evidence shows that Ridgeway separated from her child shortly after she was born, and that her contact with the child thereafter was almost nonexistent. The child only saw Ridgeway twice before the custody action and testified that she had never received letters, cards, gifts, clothing, telephone calls, or any other communication from Ridgeway, despite terms in the divorce decree clearly allowing for visitation. Additionally, even after terms for controlled visitation were created by the temporary orders and Ridgeway was given the opportunity to develop a relationship with her daughter, she did not take full advantage of her opportunities.

She was given full information about various school activities in which the child was involved, but chose to attend none. Between January and April 15, 1996, Ridgeway made no effort to attend counseling sessions and only made the effort to meet with her child twice. Moreover, there is testimony that Ridgeway attempted to alienate the child from her deceased father by telling her he had beaten Ridgeway during the marriage and had wanted to abort the child.

Ridgeway also attempted to hold the child against her will and against the terms of the court's orders during one home visitation, telling her that she was not returning to Williams's home but staying only with her. A family therapist who interviewed the child and the other parties testified that such a break in trust was highly destructive to any rapport that might have been developing. She also testified about the child's increasingly nervous and emotional state because of the enormous stress factors involved in her recent life—a number of which were directly caused or aggravated by Ridgeway.

In summary, the evidence shows that Ridgeway effectively abandoned her child from shortly after birth until she was eleven, when she suddenly decided to seek custody. We further note that the trial court has made great effort to provide a means by which some relationship can be created, if Ridgeway wishes to do so.

This evidence supports the trial court's conclusion that the appointment of Ridgeway as sole managing conservator would significantly impair the emotional development of the child.

■ Ridgeway also contends that the court erred because she has another child who is a son of Daniel Hidalgo, and that to separate siblings without clear and convincing evidence of its necessity is error as a matter of law. Courts have held that custody of two or more children of the same marriage should not be divided except for compelling reasons. *See Pizzitola v. Pizzitola,* 748 S.W.2d 568 (Tex.App.—Houston [1st Dist.] 1988, no writ). Here, Tamara Hidalgo and Ridgeway's son are not children of the same marriage. Indeed, her son was born

nearly two years after Ridgeway's divorce from Hidalgo, no action has ever been taken to determine his paternity, Daniel Hidalgo never acknowledged the child as his, and no effort has been made to meet any of the requirements of TEX. FAM.CODE ANN. § 151.002 (Vernon 1996) to provide some presumption of paternity. Since the evidence fails to show that the children are of the same marriage, the trial court did not err by disregarding this factor in its analysis.

Ridgeway finally contends that the trial court erred by ordering her to pay child support in the amount of $125.00 per month. A trial court's award of support will not be reversed unless an abuse of discretion is shown. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982); *Stocker v. Magera,* 807 S.W.2d 753, 754 (Tex.App.—Texarkana 1990, writ denied). Awards of child support are governed by TEX. FAM.CODE ANN. § 154.121, et seq. (Vernon 1996). The court is to presumptively apply a schedule set out in Section 154.125, which provides that child support should be set for one child at twenty percent of the obligor's net resources.

That amount, however, is to be reduced when the obligor has children residing in more than one household. Sections 154.128 and 154.129 of the Act set out two alternative methods of computing support when the obligor has children in more than one household. Ridgeway has three children including Tamara. Pursuant to Section 154.129, the percentage of net income to be applied when the obligor has one child before the court and two other children in another household is sixteen percent. If the amount of support ordered varies from the amount computed by applying the guidelines, the trial court must enter findings to support its ruling. There are, however, no findings of fact and conclusions of law in connection with the child support order, and no request for findings under Section 154.130 appears in the record.

■ Ridgeway has not assigned a point of error complaining of the failure to make findings. Any error in connection with the failure of the court to make findings and conclusions has been waived by Ridgeway's failure to raise the issue by appropriate point of error. TEX.R.APP. P. 74; *Belcher v. Belcher,*

808 S.W.2d 202, 206 (Tex.App.—El Paso 1991, no writ); *Courtney v. City of Sherman,* 792 S.W.2d 135 (Tex.App.—Dallas 1990, writ denied).

■ Ridgeway contends in connection with this point that there is no evidence that she had any present earning capacity. The evidence shows that she had been unemployed for a year at the time of trial. Before then, her most recent job was in the high school cafeteria, where she made between $5.50 and $6.00 per hour and worked about twenty-five hours a week. There is no evidence that she is unemployable, only that she is unemployed. In the absence of evidence that an obligor is unemployable, it is appropriate to apply the presumption that the party has wages equal to the federal minimum wage for a forty-hour week. TEX. FAM. CODE ANN. § 154.068; *In re Martin,* 881 S.W.2d 531, 536 (Tex.App.—Texarkana 1994, writ denied).

■ Applying $4.75 to a forty-hour work week provides a monthly wage of $823.33. Rounding this amount down to $800.00 per month, Ridgeway's presumed net monthly income under Section 154.061 would be $700.67. Sixteen percent of this amount would be $112.11. The court set child support at $125.00 per month. If other factors, such as her former employment at $5.50 per hour, were considered in determining Ridgeway's earning potential, the court could well have concluded from the evidence that she could obtain employment for at least that amount.

From the record before us, we cannot conclude that the trial court abused its discretion by setting child support at this level.

Ridgeway next contends that the hearings conducted by retired judge William C. Martin, III on August 22 and August 25, 1995 are void. She specifically argues only that Judge Martin's service violated TEX. GOV'T CODE ANN. § 74.053 (Vernon Supp.1997). These hearings were held on Ridgeway's initial petition for habeas relief asking for the court to deliver the child to her.

■ Ridgeway contends that the assignment of Judge Martin is defective because it

assigns Judge Martin to sit in the 307th District Court for one year from January 2, 1995, at the discretion of the regular judge of said court, Honorable Robin Sage. Ridgeway, however, waived any complaint in this regard because she did not file an objection to Judge Martin's sitting on the case. A party may, by a timely written objection, prohibit an assigned judge from hearing a case. TEX. GOV'T CODE ANN. § 74.053. In the absence of such an objection, any complaint is waived. *Texas Employment Comm'n v. Alvarez*, 915 S.W.2d 161 (Tex.App.—Corpus Christi 1996, orig. proceeding); *Holstein v. Federal Debt Management, Inc.*, 902 S.W.2d 31 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Kellogg v. Martin*, 810 S.W.2d 302 (Tex. App.—Texarkana 1991, orig. proceeding). No timely objection was made.

■ Karol Hidalgo contends by cross-point that the trial court erred by ordering her to deliver to Williams all social security proceeds previously received by her for the benefit of the child. She argues that the evidence was insufficient to support the court's order that she reimburse the child in the amount of $5,271.00 for social security benefits received on her behalf between September 1995 and April 1996, when the child was residing with Williams.

No finding of fact was requested or made on this issue. There is testimony that the amount of social security paid to Hidalgo for the child's benefit was $753.00 per month. Seven months at $753.00 per month amounts to $5,271.00, the amount that the court ordered Hidalgo to pay. The court's determination is supported by the evidence.

■ Hidalgo further contends that the court erred by ordering her to reimburse the child for the social security benefits because any rights involving federal benefits are wholly controlled by federal statutes, and that any state authority in this area has been preempted. As authority, she cites the court to 42 U.S.C.A. § 407 (West 1991).

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this sub-chapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Hidalgo's position would have merit if the funds were her property. The social security payments, however, were paid to Hidalgo as fiduciary for the benefit of the child. The moneys were received by Hidalgo for the child's benefit, but were not used for her benefit. In such a situation, the trial court did not violate Section 407 by directing the individual who received the funds to transfer those funds to the managing conservator for the benefit of the minor who was entitled to them.

For the reasons stated, the judgment is affirmed.

GRANT, Justice, concurring.

It is difficult to understand exactly what Ridgeway's point is on the assignment of Judge Martin. The majority has interpreted it to be limited to the application of TEX. GOV'T CODE ANN. § 74.053 (Vernon Supp. 1997) and such cases as *Kellogg v. Martin*, 810 S.W.2d 302 (Tex.App.—Texarkana 1991, orig. proceeding). These matters are cited by Ridgeway as authority on this point. Her point of error, however, reads as follows:

The hearings conducted by Judge William C. Martin, III on August 22, 1995, and August 25, 1995, together with any and all pronouncements made in connection therewith, are void.

Ridgeway also cites *Lone Star Industries, Inc. v. Ater*, 845 S.W.2d 334 (Tex.App.—El Paso 1992, orig. proceeding). Conduct about which Ridgeway complains is not based upon the challenge of an assigned judge, which is the area spoken to by Section 74.053.

The majority opinion accurately discusses Section 74.053 and cases involving the recusal of an assigned judge based upon a challenge by the parties. There was no challenge in the present case. The cases cited by the majority stand for the proposition that problems relating to a requested recusal under that rule are waived if not specifically objected to. It appears that Ridgeway instead should have cited the statutes dealing

with the assignment of judges, which is a much older procedure than the permitted challenge under Section 74.053. It would be appropriate to look at Sections 74.052, 74.054, 74.055, and 74.056 of the Government Code. TEX. GOV'T CODE ANN. § 74.052 (Vernon 1988), § 74.054 (Vernon Supp.1997), §§ 74.055, 74.056 (Vernon 1988 & Supp.1997).

The effect of an objection to an assigned judge is more in the nature of a recusal motion than a motion raising the judge's disqualification[2] from sitting in the case. *Texas Employment Comm'n v. Alvarez,* 915 S.W.2d 161, 165–66 (Tex.App.—Corpus Christi 1996, orig. proceeding). On the other hand, the present case does not involve a challenge made to an assigned judge. Ridgeway has not challenged the decision on the basis that some error was made in not allowing her to exercise her recusal motion, but she challenges the judgment as void on the basis that the judge was not properly assigned and had no authority in the case. Unless there is a valid assignment of a visiting judge or retired judge, that judge has no more jurisdiction to hear the case than the waiter at the Dairy Queen.

In *Houston General Ins. Co. v. Ater,* the court held that the qualifications of a retired judge to serve on assignment is a jurisdictional question which cannot be waived and which can be raised at any time. *Houston General Ins. Co. v. Ater,* 843 S.W.2d 225 (Tex.App.—El Paso 1992, orig. proceeding). (This Court followed the *Ater* decision in an unpublished opinion.)

In the present case, Ridgeway has challenged the validity of the appointment and asked this Court to declare that any judgment made by the assigned judge be declared void. This challenge was not waived by failure to object at the time of trial under the recusal objection of the Government Code. Therefore, I proceed to specifically address that issue.

Ridgeway does not contend that there was not an assignment, but rather contends that the assignment was invalid because the re-

tired judge was assigned on a broad basis for a year to that court at the discretion of the regular judge of the court. Assignments are commonly accepted for specific cases or for time periods. Section 74.056(a) calls for the assignment to be "to hold special or regular terms of court." It has never been held that the regular sitting judge was prohibited from hearing cases within the time period that an assigned judge was also sitting on other cases. This procedure is equivalent to leaving the matter to the trial judge's discretion as to what cases the assigned judge sits upon. In effect, this appointment permits the assigned judge to sit on any case during that time period other than those cases that the regular sitting judge has chosen to hear. This is an acceptable form of assignment and is not invalid on this basis.

I concur with the opinion of the majority.

---

**2.** When I authored the first bill providing for such recusals, I used the word *disqualification.* Chief Justice Joe Greenhill pointed out that disqualifications were jurisdictional and constitutional matters, and the legislation should use the word *recusal.* The Legislature later, however, unfortunately used the word *disqualification.*