

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00582-CV

**IN THE INTEREST OF R.F., JR.**

From the 218th Judicial District Court, Frio County, Texas
Trial Court No. 15-07-00262CVFA
Honorable Melissa Uram-Degerolami, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  March 14, 2018

AFFIRMED

Raul,[1] the biological father of R.F., Jr. (born in 2009), appeals the trial court's order appointing R.F., Jr.'s foster father as the child's managing conservator and appointing Raul as a possessory conservator. Raul argues the trial court lost jurisdiction over the case when it failed to timely commence the trial on the merits and that the trial court abused its discretion by failing to appoint him as a managing conservator. We affirm the trial court's judgment.

### BACKGROUND

In 2015, the Department of Family and Protective Services filed an original petition for conservatorship of R.F., Jr. and to terminate Raul's parental rights. Under the trial court's July 2,

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, parents are referred to by their first names and children are referred to by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

2015 order, the Department removed R.F., Jr. based on sworn allegations that his mother was incarcerated and his maternal aunt brought him and his siblings to the Department's office in Pearsall, Texas, where his aunt stated she could not financially support the children.[2] R.F., Jr. and his siblings were placed with a foster father.

The case proceeded to a bench trial. Department caseworker Rosa Garcia, licensed professional counselor Erin Hernandez, and Raul testified. The trial court also admitted a social study and psychological evaluation of Raul, as well as Raul's family service plan. After the trial on the merits, the trial court signed a final order appointing R.F., Jr.'s foster father as managing conservator and Raul as possessory conservator. Raul timely appealed.

### FAILURE TO TIMELY COMMENCE TRIAL

Raul argues the trial court lost jurisdiction over this case under section 263.401 of the Texas Family Code because the trial court failed to timely commence the trial on the merits. Generally, section 263.401 requires a trial court to commence trial in a suit affecting the parent-child relationship within a year of the date the trial court rendered a temporary order appointing the department as a child's temporary managing conservator. *See* TEX. FAM. CODE. ANN. § 263.401(a) (West Supp. 2017). However, a trial court may retain such a suit on its docket without commencing trial within one year if "the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." *Id.* § 263.401(a), (b); *In re D.M.*, 244 S.W.3d 397, 415 (Tex. App.—Waco 2007, no pet.).

---

[2] The Department also sought relief regarding R.F., Jr.'s siblings, but the trial court severed the claims regarding the other children into a separate suit. Also, the trial court terminated the parental rights of R.F., Jr.'s mother in August 2016.

The trial court rendered a temporary order appointing the Department as R.F., Jr.'s temporary managing conservator on July 2, 2015. On June 24, 2016, the trial court signed an order under section 263.401(b) that retained the suit on its docket and set December 31, 2016, as the new dismissal date. Although Raul asserts the trial did not commence until April 28, 2017, the record shows the trial commenced on December 19, 2016. On December 19, 2016, the trial court asked if the parties were ready to proceed to trial. Raul announced not ready and stated he was filing a motion for continuance and, alternatively, moved to dismiss the suit under section 263.401. The trial court denied Raul's motion for continuance and alternative motion to dismiss and proceeded to trial. Raul did not further object. The Department called its first witness, Rosa Garcia, who provided brief testimony before the trial court recessed. The trial resumed on April 28, 2017. The record establishes the trial court timely commenced the trial on the merits under section 263.401(a). We therefore cannot say the trial court lost jurisdiction of the case under section 263.401 of the Texas Family Code by failing to timely commence the trial.

**APPOINTING A NON-PARENT AS R.F., JR.'S MANAGING CONSERVATOR**

Raul argues the trial court erred under Texas Family Code section 153.004 by appointing a non-parent, R.F., Jr.'s foster father, as managing conservator, and by not appointing Raul as managing conservator. Section 153.131 of the Texas Family Code provides:

> (a) Subject to the prohibition in Section 153.004, unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.
> (b) It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection.

TEX. FAM. CODE. ANN. § 153.131(a) (West 2014).[3] Here, the trial court found appointment of R.F., Jr.'s parents would not be in his best interest because the appointment would significantly impair his physical health or emotional development. Raul contends there is insufficient evidence to support this finding.

"[A] finding that appointment of a parent as managing conservator would significantly impair the child's physical health or emotional development is governed by a preponderance-of-the-evidence standard." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "Conservatorship determinations, in contrast [to findings made in support of terminating parental rights], are subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *Id.*

Section 153.131 of the Texas Family Code "requires the nonparent to offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990); *see Thomas v. Thomas*, 852 S.W.2d 31, 36 (Tex. App.—Waco 1993, no writ). Such specific, identifiable behavior or conduct of a parent may include abandonment of a child, a failure to support the child, and failure to remove a child from an unstable environment. *In re C.R.T.*, 61 S.W.3d 62, 67 (Tex. App.—Amarillo 2001, pet. denied) (abandonment and failure to support; *May v. May*, 829 S.W.2d 373, 377 n.2 (Tex. App.—Corpus Christi 1992, writ denied) (abandonment and failure to remove from an unstable environment).

In *Thomas v. Thomas*, the court of appeals held a trial court did not abuse its discretion by failing to appoint the child's father as a managing conservator. 852 S.W.2d at 36. For three and a half years, the father in *Thomas* had no contact with the child; failed to support the child; and left

---

[3] Section 153.004 prohibits a trial court from appointing a parent as a child's managing conservator if credible evidence shows history or pattern of certain abuse, neglect, or family violence. *See id.* § 153.004(b), (d).

the child with her mother, who had given custody of the child to another adult and who the father suspected would have used child support for buying drugs and alcohol. *Id.* at 35-36. Although a court-appointed investigator who performed a social study of the parties recommended that the father be named managing conservator, found nothing to disqualify him, and felt that he could provide the child with the most stable home, the court of appeals concluded the father's conduct was sufficient to support the court's finding of significant impairment to the child's emotional development or physical health. *Id.* Although the trial court in *Thomas* made findings that the father had a history of crime, drug and alcohol abuse, and dishonesty with the child, the court of appeals' analysis focused on the father's admission that the mother was unable to care for the child alone, and knowing about the mother's drug and alcohol abuse, the father "did not intervene for over three years and provided no support." *Id.* at 36. The court reasoned that "allowing a child to remain in an unstable environment is the type of conduct that can significantly impair emotional development." *Id.*

In *In re Hidalgo*, the court of appeals affirmed a trial court's order appointing a non-parent as a managing conservator when the mother "separated from" the child at birth and had no contact with the child for several years. 938 S.W.2d 492, 497 (Tex. App.—Texarkana 1996, no writ). The mother in *In re Hidalgo* saw the child only twice before seeking custody. *Id.* However, the child "had never received letters, cards, gifts, clothing, telephone calls, or any other communication" from the mother. *Id.* The mother also did not take full advantage of her opportunities to spend time with the child, told the child her father was abusive and wanted to abort the child, and once held the child against her will against the terms of the court-ordered visitation. *Id.* A family therapist testified in *In re Hidalgo* that the child became increasingly nervous and emotional because of stress factors caused by the mother. *Id.* The court of appeals in *In re Hidalgo* held this evidence

supported the trial court's conclusion that the appointment of the mother as sole managing conservator "would significantly impair the emotional development of the child." *Id.*

Here, the evidence showed that Raul repeatedly allowed R.F., Jr.'s mother to take R.F., Jr. from Mexico to the United States, and that Raul knew she had used or sold drugs and, for support, relied on family members who used drugs. Caseworker Garcia stated Raul told her:

> that when [the mother] was in Mexico with the kids, he tried. He was wanting to keep the kids and let [the mother] come back to the United States, but he didn't want to be involved with going through court and having -- being in trouble with the Mexican police and the D [sic], so he just let me -- he knew that -- he stated he knew that [the mother] was not in a good role, in a good path in her life, so he just ended up letting her take the kids back to the United States.

According to Garcia, Raul indicated he meant "that he knew [the mother] was using drugs." Garcia further testified that R.F., Jr.'s mother was in jail in the United States while this case was pending.

The social study for Raul noted R.F., Jr.'s mother went from Mexico to the United States several times in 2011, and the last time she left with R.F., Jr., Raul "told her not to return." R.F., Jr.'s mother took R.F., Jr. back to Mexico in 2014 for three months to avoid "legal problems possibly having to do with selling drugs, in which she involved [Raul] too," and despite knowing this, Raul allowed the mother to return to the United States with R.F., Jr.

Raul testified he did not know R.F., Jr.'s mother was a drug user, but knew her family members used drugs and her family members were her support system in the United States. Raul also stated he did not make any attempts in Mexico or in the United States to regain custody of R.F., Jr. because he did not "have the documents" to come to the United States, and he thought R.F., Jr. would have a better life in the United States.

The evidence also showed Raul had no contact with R.F., Jr. and provided no financial or emotional support for approximately three years. Raul testified he did not have contact with R.F.,

Jr. for approximately three years. He also stated when he called R.F., Jr.'s mother, she would not put R.F., Jr. on the phone to talk with Raul.

Garcia testified Raul was living in Mexico, and after R.F., Jr.'s mother returned to the United States, Raul did not attempt to find R.F., Jr., call him, or send him letters, birthday cards, or gifts for three years. She also testified R.F., Jr. expressed his desire to stay with his foster father and to be adopted by him.

Counselor Hernandez testified R.F., Jr. did "not have a recollection of who [Raul] is," and insists that his foster father "is his dad." She further explained that R.F., Jr. and his foster father are bonded, and R.F., Jr. talks about his foster father "[e]very chance he gets." Hernandez explained R.F., Jr. shares stories about his foster father, "things they did, conversations they had, and places they had traveled to," and R.F., Jr. makes drawings for his foster father and writes the words "I love you." According to Hernandez, R.F., Jr. has a defiant side, "so it is common for him to soil when things are not to his liking." Hernandez testified that when she asked R.F., Jr. about Raul and showed him pictures of Raul, R.F., Jr. "shut down," suffered setbacks, and appeared withdrawn and depressed. She also stated it was foreseeable that if R.F., Jr. were placed with Raul in Mexico, R.F., Jr. would struggle, experience further behavioral setbacks (including an increase in soiling accidents, crying episodes, and tantrums), and have a "very difficult time." Hernandez further explained that R.F., Jr. and his siblings have had only one consistent factor in their lives: each other. Based on R.F., Jr.'s failure to recognize Raul, she recommended revisiting therapy and future contact with Raul "down the road preferably when [R.F., Jr.] is able to process and understand a bit better."

The evidence shows Raul failed to maintain contact with R.F., Jr. and failed to financially and emotionally support him for three years, and failed to remove him from an unstable environment in which R.F., Jr.'s mother was fleeing from incarceration and either used or sold

drugs. Consequently, R.F., Jr. was removed from his mother and placed with a foster father, who R.F., Jr. now considers his dad, and R.F., Jr. failed to recognize Raul. There is also evidence showing that if Raul was appointed a managing conservator, he would move R.F., Jr. back to Mexico away from his siblings and foster father, which would significantly impair R.F., Jr.'s emotional development. Although it was undisputed that Raul had stable employment, could provide a stable home, and had no history of crime, abuse, or domestic violence, the evidence supports the trial court's finding that appointing Raul as a managing conservator would significantly impair R.F., Jr.'s physical health or emotional development. *See Lewelling*, 796 S.W.2d at 168; *In re C.R.T.*, 61 S.W.3d at 67; *In re Hidalgo*, 938 S.W.2d at 497; *Thomas*, 852 S.W.2d at 35-36. We therefore cannot say the trial court's conservatorship determinations were arbitrary, unreasonable, or an abuse of discretion.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice